633 P.2d 446

Mike FRANCO, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Food Giant Super Market #2, Respondent-Employer,

Western Fire Insurance Company, Respondent-Carrier.

No. 1 CA–IC 2372.

Court of Appeals of Arizona, Division 1, Department C.

June 25, 1981.

Rehearing Denied July 31, 1981.

Review Denied Sept. 17, 1981.

38

Frank W. Frey, Tucson, for petitioner.

Calvin H. Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Donald L. Cross, Larry L. Smith, Phoenix, for respondent-employer and respondent-carrier.

OPINION

O'CONNOR, Presiding Judge.

The issue raised in this Industrial Commission special action is whether a voluntary retirement of an injured workmen's compensation claimant is grounds for a readjustment of his loss of earning capacity benefits. We hold that it is not, and set aside the award.

The petitioner, Mike Franco, suffered a back injury in 1969 when he was unloading produce at work. At the time of his injury, Mr. Franco was earning $620.24 per month. In 1971, the Industrial Commission determined that the claimant had an unscheduled permanent partial disability representing a 15% general physical functional impairment. Inasmuch as Mr. Franco had returned to his former employment, it was determined that he had no loss of earning capacity. However, in 1972, he found it necessary to change his employment due to his impairment. He accepted employment as a building custodian at a lower wage. His petition for rearrangement of his compensation benefits was granted and he was found to have a 47.2% loss of earning capacity. He was awarded $161.01 per month as workmen's compensation benefits.

In 1978, Mr. Franco's employer notified him that he would reach the mandatory retirement age of 65 on July 27, 1978, and that he would be retired on August 1 unless he applied for and received an extension from the Board of Education. Mr. Franco did not apply for an extension. He testified that he would have retired anyway because: "I couldn't work any more, my work was getting too heavy for me. I was having problems." In the meantime the federal law changed, increasing the mandatory retirement age to 70; however, Mr. Franco was unaware of the change in the law until after his retirement on July 31, 1978. Mr. Franco now receives social security benefits and a $78.04 per month pension from the Sunnyside School District.

The carrier in this case petitioned for a rearrangement or readjustment of benefits based on an allegation that Mr. Franco's earning capacity had increased since the award as provided in A.R.S. § 23–1044(F)(3). The carrier's petition was filed in April, 1979, before Mr. Franco's retirement. The Industrial Commission denied the petition, and the carrier filed a request for hearing. The hearing was held in November, 1979, after Mr. Franco had retired. Following the hearing, the carrier argued alternatively that the employee's earning capacity had increased before his retirement based on various step increases in pay over the years, or that benefits should be denied because the employee had retired voluntarily, thereby creating a changed economic status of his own making. The carri-

er relied upon *Bryant v. Industrial Commission*, 21 Ariz.App. 356, 519 P.2d 209 (1974); *Hobbs v. Industrial Commission*, 20 Ariz. App. 437, 513 P.2d 975 (1973); and *Whitlock v. Industrial Commission*, 19 Ariz.App. 326, 507 P.2d 128 (1973), for the proposition that a workmen's compensation claimant is not entitled to loss of earning capacity benefits if he voluntarily removes himself from the labor market. The administrative law judge based his findings and award on the cases cited and determined that the carrier had met its burden of proof, and that the employee was entitled to no loss of earning capacity benefits because he had voluntarily removed himself from the labor market by retiring at age 65.

We must view the evidence in the light most favorable to sustaining the findings and award of the Industrial Commission and will not set aside the award if it is based upon any reasonable interpretation of the evidence. *Bergstresser v. Industrial Commission*, 118 Ariz. 155, 575 P.2d 354 (App.1978). However, regardless of whether the respondent employee retired voluntarily or involuntarily, the award must be set aside because the hearing judge readjusted the employee's loss of earning capacity benefits on a ground not authorized by statute. A.R.S. § 23–1044(F) provides that an award of compensation benefits can be changed in the following circumstances:

1. Upon a showing of a change in the physical condition of the workman subsequent to such findings and award arising out of the injury resulting in the reduction or increase of his earning capacity.

2. Upon a showing of a reduction in the earning capacity of the workman arising out of such injury where there is no change in his physical condition, subsequent to the findings and award.

3. Upon a showing that his earning capacity has increased subsequent to such findings and award.

■ We believe the carrier and the hearing judge have failed to consider the statutory scheme in Arizona for rearrangement and readjustment of benefits. Under the workmen's compensation act as it is now written, compensation for an unscheduled permanent partial or total disability continues unless or until the disability ends. A.R.S. §§ 23–1044(C); 23–1045(A)(1). The determination of disability is a determination of the injured worker's ability to be employed, and requires an evaluation of the worker's medical permanent impairment as well as the worker's age, sex, education, and employment restrictions and opportunities. *Smith v. Industrial Commission*, 113 Ariz. 304, 552 P.2d 1198 (1976). This determination is normally referred to as the loss of earning capacity determination. The claimant has the burden of proving the initial loss of earning capacity caused by the injury. *Oliver v. Industrial Commission*, 14 Ariz.App. 200, 481 P.2d 886 (1971). A failure of the injured workman to make a good faith and reasonable effort to secure work may support a finding that the industrial injury is not the cause of the employee's loss of earnings. *See, e. g., Schnatzmeyer v. Industrial Commission*, 77 Ariz. 266, 270 P.2d 794 (1954). Also, the burden of going forward with the evidence in a loss of earning capacity hearing does not shift to the employer if the injured employee fails to prove he has made a good faith and reasonable effort to find other work. *See, e. g., Wiedmaier v. Industrial Commission*, 121 Ariz. 127, 589 P.2d 1 (1979), and cases cited therein.

■ However, Arizona's statutory scheme does not require that a claimant always prove his reduced earning capacity by showing an unsuccessful good faith effort to obtain suitable employment. A claimant may meet his burden of proof by relying upon expert testimony to show the type of work the claimant is able to perform with his industrial injuries, and the amount which would be earned in such employment. Such evidence could satisfy the claimant's duty to mitigate his damages. *Hoffman v. Brophy*, 61 Ariz. 307, 149 P.2d 160 (1944). *See also Employers Mut. Liab.*

*Ins. Co. of Wisc. v. Industrial Commission,* 25 Ariz.App. 117, 541 P.2d 580 (1975), in which the injured employee was excused from seeking employment by showing medical restrictions on the type of activities he could perform plus evidence of his advanced age and lack of education. *Also see generally* Annot., 89 A.L.R.3d 783 (1979), and cases cited therein.

■ Once the initial loss of earning capacity has been determined, the payment of benefits continues unless forfeited or suspended, pursuant to A.R.S. §§ 23–1071, –1026(E), –1027, –1028, and –1047(D) or (E),[1] or changed pursuant to A.R.S. § 23–1044(F). A.R.S. § 23–1044(F) allows only three grounds for a petition to change benefits: the petitioner must show that, since the award, either the employee's industrially caused physical condition has changed, his earning capacity has been reduced, or his earning capacity has increased. Petitions for an *increase* of benefits based on a reduction of earning capacity are filed, quite naturally, by injured claimants. The *Bryant* case relied upon by respondent and the hearing judge arose out of a petition by the injured claimant seeking to increase the benefits as a result of a loss of employment after the initial award of benefits. The *Hobbs* and *Whitlock* cases involved the initial determination of loss of earning capacity. The *Bryant* case stands for the proposition that a claimant may not obtain an increase of his workmen's compensation benefits based on a reduction in his earning capacity when the evidence shows that he voluntarily left his job and his reduced earnings were the result of his own action. Had Mr. Franco petitioned in this case for an increase in his benefits, the hearing judge would have been required to consider whether he had voluntarily removed himself from the labor market.

On the other hand, petitions to *reduce* workmen's compensation benefits based on an increased earning capacity are filed, quite naturally, by carriers or employers, based on improvements in the injured workman's earning capacity. However, nowhere does the statute provide for a reduction of previously established loss of earning capacity benefits based on a subsequent voluntary withdrawal by the claimant from the labor market. The question under our statutory scheme is whether there has been an increase in the *earning capacity* of the employee.

■ No reported Arizona decision has been cited which discusses the effect of a worker's retirement on his workmen's compensation benefits. However, we are guided by the reasoning in analogous cases and cases from other jurisdictions. Workmen's compensation temporary benefits were not reduced or eliminated in the case of an injured worker who was subsequently imprisoned for a criminal offense and thereby removed from the labor market. *Bearden v. Industrial Commission,* 14 Ariz.App. 336, 483 P.2d 568 (1971). Nor were they apparently reduced or eliminated in the case of a student who did not compete in the open labor market while attending school. *Wimmer v. Industrial Commission,* 26 Ariz.App. 524, 549 P.2d 619 (1976). *Contra, Feudi v. Big Apple Store #34,* 46 A.D.2d 967, 362 N.Y.S.2d 55 (1974).

Confinement in a public institution or hospital has been held not to deprive the injured worker of continued benefits, absent a statutory prohibition. *Neal v. Stuart Foundry Co.,* 250 Mich. 46, 229 N.W. 595 (1930); *Ogden Union Ry. & Depot Co. v. Industrial Commission,* 85 Utah 124, 38 P.2d 766 (1934). The rationale of such cases is that the purpose of workmen's compensation is to reimburse injured workers for loss of earning *capacity,* not loss of *earnings.*

---

1. A.R.S. § 23–1071 provides for forfeiture of benefits if an employee leaves the state for more than two weeks without commission approval; –1026(E) and –1027, reduction or suspension of compensation of an employee who refuses treatment or acts so as to imperil or retard his recovery; –1028, forfeiture of benefits after a conviction for making false statements to obtain compensation; and –1047(D) and (E), suspension of benefits for failure to report earnings to the commission.

*See* Blair, Reference Guide to Workmen's Compensation Law, Sec. 11:18 (1974).

Retirement of the claimant was expressly held not to deprive him of a permanent disability award in *Van Voorhis v. Workmen's Compensation Appeals Board*, 37 Cal. App.3d 81, 112 Cal.Rptr. 208 (1974). The court reasoned:

> The permanent disability award constitutes a substantial remedy for the remedy which was lost when the Legislature took away the right to sue an employer for damages. If an applicant were denied a permanent disability award simply because he has retired, he would be deprived of his quid pro quo in that legislative bargain.

*Id.* at 90, 112 Cal.Rptr. at 214.

The New York courts have also held that voluntary retirement did not disqualify an injured worker from receiving benefits. *O'Connell v. New York State Workmen's Compensation Board*, 14 A.D.2d 945, 221 N.Y.S.2d 491 (1961); *Dygert v. General Electric Co.*, 54 A.D.2d 1006, 387 N.Y.S.2d 925 (1976).

We hold that a workmen's compensation claimant's voluntary retirement from his work does not furnish a basis for granting a carrier's or employer's petition for a reduction of benefits pursuant to A.R.S. § 23–1044(F)(3). Such a petition requires proof of an increase in the injured worker's earning capacity and a determination thereof.

The award is set aside.

WREN and FROEB, JJ., concur.