823 P.2d 1289

**Randall KINNARD, Petitioner Employee,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Cyprus Twin Buttes Corporation, Respondent Employer,**

**Cyprus Minerals Company, Respondent Carrier.**

**No. 1 CA–IC 90–046.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 24, 1991.

Petition and Cross–Petition for Review Granted Feb. 19, 1992.

Ely, Bettini & Ulman by Trace A. Bartlett, Phoenix, for petitioner Employee.

Anita R. Valainis, Chief Counsel, Indust. Com'n of Arizona, Phoenix, for respondent.

O'Conner, Cavanagh, Anderson Westover, Killingsworth & Beshears, P.A. by Donald L. Cross and J. Victor Stoffa, Phoenix, for respondents Employer and Carrier.

## OPINION

LANKFORD, Judge.

The question presented in this challenge to the denial of temporary disability benefits is whether the administrative law judge could find that the claimant's loss was caused by his termination from employment for misconduct rather than by an industrial injury. We hold that the judge's finding was supported by evidence, and we therefore uphold the award denying benefits.

### I.

The claimant, Randall Kinnard, was employed by Cyprus Twin Buttes Corporation and assigned to work in its solvent extraction operation.

Kinnard was injured in an explosion and suffered injuries, including skin burns, a perforated ear drum, and some damage to his right eye. Following hospitalization and a course of treatment, his physician released him for light work with instructions to restrict the use of his left arm and to avoid exposure to chemicals and to the sun.

The claimant returned to work at Cyprus, which temporarily assigned him to new, lighter duties. His principal responsibility was monitoring a control board. The new assignment was not a "make work" job, but a necessary part of the employer's operations.

A few days after the claimant returned to work, the employer received drug test results which showed that claimant had used marijuana. He was discharged for that reason on April 17, 1989.

The claimant sought other work. He remained unemployed until October 12, 1989, when he found work as a night security guard at the Arizona State Fair. At the time of the hearing in December 1989, he had found regular employment in his area of expertise.

The petitioner claimed that the injury he suffered while working for Cyprus precluded him from finding work for the six months from April until October. He sought temporary partial disability benefits for that period. He also sought temporary partial compensation for the period after October 12, 1989, when he was again working. The administrative law judge denied

benefits prior to October 12, 1989, and awarded benefits after that date. The petitioner challenges the denial of benefits from April to October. The respondents have not sought review of the award of benefits.

## II.

The petitioner argues that the administrative law judge abused his discretion in finding that petitioner sustained no compensable loss of earning capacity. According to petitioner, the judge erred in determining that petitioner's evidence failed to discharge his burden of proving a loss of earning capacity on the grounds that the evidence failed to reveal a good faith effort to find suitable work and failed to show that the inability to find other work was due to the industrial injury rather than the termination for misconduct.

Both of the questions raised by petitioner are matters of law freely reviewable by this court.

■ We agree with petitioner in part. His proof was sufficient to shift the burden to the employer to show that no earning capacity was lost. As a general rule, if a claimant cannot return to regular work following an injury and makes a good-faith effort to find suitable work, the burden shifts to the employer to establish that suitable work is reasonably available. *See, e.g., Felker v. Industrial Comm'n,* 134 Ariz. 19, 653 P.2d 369 (App.1982). However, producing this evidence did not conclude the question of compensability.

■ When a claimant has established a post-injury earning capacity and subsequently loses his job for reasons unrelated to the industrial injury, the claimant must prove that the injury contributed to his ongoing unemployment. *See, e.g., Fletcher v. Industrial Comm'n,* 120 Ariz. 571, 587 P.2d 757 (App.1978), and 2 A. Larson, *The*

*Law of Workmen's Compensation,* § 57.-64(a) at p. 10–264 to 10–267 (1989). The matter of causation thus remains part of the employee's burden of proof.

Moreover, the failure to prove that a loss of earning capacity occurred was not the issue on which the administrative decision rested. Instead, the judge found that the cause of petitioner's loss was his termination for misconduct—a cause "of his own making"—and not an industrial accident.

■ The dissent argues that, as a matter of law, an administrative law judge cannot find that a claimant's termination from employment for misconduct was a cause of his loss of earning capacity. The dissent relies upon *Arizona Dept. of Pub. Safety v. Industrial Comm'n,* 170 Ariz.App. 275, 823 P.2d 1283 (1991). However, we respectfully believe that this reliance merely replicates the error committed in that case. *See id.* at 280, 823 P.2d at 1288 (Lankford, J., dissenting).

Causation is an issue for the administrative law judge to decide. The majority in *Arizona Dept. of Pub. Safety* failed to give effect to the well established requirement that the claimant prove causation. The intent of the Legislature was to limit the scope of workers' compensation to losses attributable to injuries arising out of employment. *See* A.R.S. § 23–1041(A).[1]

The statutes reveal that the Legislature foresaw situations in which more than one factor contributes to a diminution in a worker's earning capacity. The Legislature addressed the situation by declaring that when the cause of the worker's loss is *not* an industrially related disability, the loss is not to be compensated by the workers' compensation system. *Cf.* A.R.S. §§ 23–1041(A), 23–1044(C).

The majority in *Arizona Dept. of Pub. Safety* and the dissent here nevertheless argue that the administrative law judge cannot consider one possible cause of the

1. *Arizona Dept. of Pub. Safety* involved permanent partial disability, while this case involves temporary disability benefits. The statutory causation requirement is more explicit for the latter than for the former. *Compare* A.R.S. § 23–1044(C) *with* § 23–1041(A). Nonetheless, the requirement of proof of industrial causation

as a condition to receipt of temporary benefits is well established. *See Olszewski v. Industrial Comm'n,* 113 Ariz. 282, 551 P.2d 551 (1976); *Payton v. Industrial Comm'n,* 27 Ariz.App. 92, 551 P.2d 82 (1976); *Hershner v. Industrial Comm'n,* 14 Ariz.App. 539, 484 P.2d 1068 (1971).

worker's loss, his termination for misconduct. We find no hint whatever in the statute that the Legislature intended the anomalous result of permitting the judge to consider all of the possible causes of the worker's loss except a cause within his control—his own misconduct.

On the contrary, the Legislature clearly created two categories of loss: compensable loss which is loss caused by an industrial disability and noncompensable loss which is loss caused by any other source. Termination for misconduct is simply one of many possible causes of lost earning power. We find no warrant in the legislative language or purpose for removing this fact from the administrative law judge's consideration of the causation question.

The Legislature's compensation program is necessarily limited in scope. There is no hint that the Legislature intended to compensate a worker for an off the job accident, a disease unrelated to working conditions, or for the loss of employment due to the worker's misconduct. The workers' compensation system is not a scheme of universal social and health insurance.

We must adhere to the Legislature's intent in this matter. *See Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 697 P.2d 684 (1985). In our opinion, the majority in *Arizona Dept. of Pub. Safety* and the dissent here err by overlooking the legislative intent and by reaching a conclusion contrary to the legislative directive.

This interpretation of the statute is also supported by the preeminent authority on worker's compensation law, Professor Larson. He notes that an employee's misconduct is a possible cause of his loss. In fact, he urges legislative change to ameliorate the severity of a causation rule which could be applied to deny all compensation. 2 A. Larson, *Workmen's Compensation Law* § 57.64(a) at p. 10–269 (1989). Larson's discussion of the issue suggests that the

perceived problem—denying disability compensation to an employee who lost his job due to his own misconduct—cannot be remedied under existing statutes. No matter how free judges may be to revise judge-made law, our task is to apply legislation, not to amend it.

Applying the statute as written is also not as harsh as it may first appear. The fact that the employee was terminated for misconduct does not alone disqualify him from compensation. Rather, that fact merely creates a question of causation for the administrative law judge to resolve.

The judge might well resolve the causation question in favor of the terminated employee. The circumstances of a particular case might support a finding that, despite the misconduct, the employee's industrial disability caused his loss.

For example, the economic loss is more likely to have been caused by the disability when, as in this case, the industrial injury prevented the employee from returning to regular work and led the employer to assign the employee to temporary light duty. When, in contrast, a partially disabled employee is able to return to his former position, it appears less likely that earning power was impaired by the industrial injury. The industrial cause may also be more likely when the employee's misconduct would generally be regarded as less disqualifying for employment by other potential employers than it was by the original employer. These matters are for the parties' proof, however, and for the administrative law judge to resolve. The administrative law judge here correctly applied A.R.S. § 23–1044(C), and is entitled to resolve this fact question based on the evidence.[2]

The dissent relies on *Doles v. Industrial Comm'n*, 167 Ariz. 604, 810 P.2d 602 (App. 1990). The *Doles* decision was premised on

---

**2.** Both an industrial disability and the worker's misconduct conceivably could contribute as causes of diminished earning capacity. An industrial injury need only be a cause of the loss, not the sole cause, in order to compensate for the loss. *Moore v. Industrial Comm'n*, 2 Ariz. App. 143, 406 P.2d 861 (1965). On the other

hand, the mere assertion of competing theories of causation by the parties does not require that the administrative law judge find multiple compensation and award compensation. When supported by the evidence, the judge may determine that a single factor caused the loss.

the policy that an injured employee's "sheltered work" position could not be used to measure earning capacity because the claimant would risk becoming a "captive" employee. In a case of permanent partial disability, an injured employee could become the captive of his employer. However, this concern should not control cases of temporary partial disabilities. The employee who incurs only a temporary partial disability, and is assigned light duty only on a temporary basis, can return to his former position, recover his lost earning capacity, and regain his ability to compete in the open labor market. Such an employee is not a "captive" of the employer.

Furthermore, this distinction advances another policy concern articulated by the court in *Doles*. *Doles* recognized that sound public policy should encourage employers "to accommodate the needs of disabled workers and attempt to keep them on the job." 810 P.2d at 606. Only because of its greater concern for the "captive" employee in the permanent disability situation did the court strike the balance as we did. When the concern for the captive employee situation is diminished, as in a case of temporary partial disability, surely even the *Doles* reasoning favors the competing concern of encouraging employers to provide light temporary work.

Encouraging light temporary work especially benefits claimants with temporary partial disabilities. An employee who remains on the payroll until he can resume his original duties may avoid a loss of seniority, pay grade, or other benefits which might be lost if he must find new employment or seek to be rehired to his previous job.

Because the administrative law judge correctly applied the law and resolved the factual conflict consistent with the evidence, we affirm the award.

GERBER, P.J., concurs.

KLEINSCHMIDT, Judge, dissenting:

I dissent because I believe that the fact that the claimant was discharged for misconduct is immaterial to the question whether he is entitled to compensation. I

further believe that the job to which the claimant returned after his injury was a sheltered position and cannot be used to establish his earning capacity. In my opinion, the claimant also proved that there was no work available to him during the period for which he requests temporary partial compensation benefits.

I first consider how the fact that the claimant was fired for misconduct affects his claim. The administrative law judge found that the sole reason that the claimant did not continue with the job of monitoring the control board was because he tested positive for marijuana use. The judge concluded that the predominant cause of the claimant's changed economic status was of his own making, and that he should be treated the same as an uninjured worker. He concluded:

> It is found, therefore the applicant does not have a loss in earning capacity relative to the industrial injury and is not entitled to temporary compensation benefits after April 17, 1989.

While the administrative law judge seems to have concluded that the injured claimant's misconduct was a superseding cause of his economic loss which cut off his right to temporary benefits, the inescapable fact is that the claimant's economic loss resulted both from the loss of his sheltered job *and* from the physical limitations that were the result of his industrial injury. Under these circumstances, for the reasons stated in *Arizona Dept. of Pub. Safety v. Industrial Comm'n*, 170 Ariz. 275, 823 P.2d 1283 (App.1991), I believe that the fact that the claimant lost his job—in this case his sheltered job—as the result of misconduct, is immaterial.

The respondents make a more refined, if fleeting, argument based on the firing for misconduct. They infer that the reason the claimant could not find another job was because prospective employers knew that he was a marijuana user. They take the position that the claimant did not carry his burden of proof because he did not show when, after he was fired, he first tested negative for drug use. I reject this argu-

ment because I simply do not believe, without some basis in the record, that it was likely that prospective employers routinely tested applicants for the types of jobs the claimant was seeking for drug use. Even if I believed that the claimant had the burden of proof on this point and failed to carry it, I would set aside the award because the administrative law judge found, as a matter of law, that because the claimant was fired for misconduct, his loss was unrelated to his disability.

I turn to the question whether the job of monitoring the electronic control board could properly be used to establish the claimant's post-injury earning capacity. Before the accident, the claimant:

> did everything from handling chemicals, acids, kerosenes, anything from lifting up to 150 pounds of copper sheets, digging trenches, ... moving pumps, working on pumps, running assays ... with acids, working in the tank house where there was acid fumes, manual labor if it needs to be done ...

In addition to all of this, the claimant had monitored the electronic control board, a small facet of his former job that was his only responsibility after the accident. While monitoring the board was useful to Cyprus, its personnel manager conceded that this did not need to be done on a full-time basis. There was no evidence that anyone else would have been hired solely to perform this task. In my opinion, the job was a sheltered position, and I think the administrative law judge abused his discretion in finding that the job of monitoring the control board accurately reflected claimant's post-injury earning capacity. *See Allen v. Industrial Comm'n*, 87 Ariz. 56, 347 P.2d 710 (1959) (earning capacity cannot be measured by a make-work or sheltered job).

There is another reason the administrative law judge erred, and the majority here errs, on finding that the monitoring job represented the claimant's earning capaci-

ty. The finding ignores this court's opinion in *Doles v. Industrial Comm'n*, 167 Ariz. 604, 810 P.2d 602 (App.1990), which stands for the proposition that no matter how important a job may be to an employer, it cannot be used as a measure of earning capacity unless it is a position that was available on the open labor market. *Doles* is grounded on the policy that an injured worker should not be made the captive of one job. There was no evidence that any job like the one given to the claimant was available on the open labor market, and the inference to be drawn from the testimony in this case suggests otherwise.[3] The majority believes that *Doles* should not apply to cases of temporary partial disability. In view of the fact that a temporary disability often persists for long periods and that workers in such a situation are as vulnerable as those who have been permanently disabled, the distinction is not a convincing one.

Finally, I believe that the claimant satisfied his burden of demonstrating that he made a good-faith effort to find suitable work. He consistently demonstrated a willingness to work. He requested the medical release to return to light work at Cyprus. After he was fired, he immediately began looking for another job. While some of the work that he sought, given his injury, was unsuitable, other jobs that he applied for he could have performed. His inability to find work for five months after he left Cyprus supports a reasonable conclusion that he failed to find suitable work because none was available. *See Schnatzmeyer v. Industrial Comm'n*, 77 Ariz. 266, 268, 270 P.2d 794, 795 (1954).

I would set aside the award.

---

**3.** *Doles* also supports the conclusion that a firing for misconduct from a sheltered position that is not available on the open labor market is immaterial to whether a claimant is entitled to compensation. In essence, if the job was not available on the open market, in contemplation of law for compensation purposes it is just as if the claimant had never held the position.