861 P.2d 603

**ARIZONA DEPARTMENT OF PUBLIC SAFETY, Petitioner Employer,**

**State Compensation Fund, Petitioner Carrier,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Daniel T. Gibson, Respondent Employee.**

**Randall KINNARD, Petitioner Employee,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Cyprus Twin Buttes Corporation, Respondent Employer,**

**Cyprus Minerals Company, Respondent Carrier.**

**Nos. CV–91–0287–PR, CV–91–0426–PR.**

Supreme Court of Arizona, En Banc.

Oct. 14, 1993.

State Compensation Fund by Christopher E. Kamper, Chief Counsel, and Christopher O. Anderson, Phoenix, for Arizona Dept. of Public Safety and State Compensation Fund.

Industrial Com'n of Arizona by Anita R. Valainis, Chief Counsel, Phoenix, for Industrial Com'n of Arizona.

Taylor & Schaar by Richard E. Taylor and Thomas R. Stillwell, Phoenix, for Daniel T. Gibson.

Ely, Bettini & Ulman by Trace A. Bartlett, Phoenix, for Randall Kinnard.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by J. Victor Stoffa and Donald L. Cross, Phoenix, for Cyprus Twin Buttes Corp. and Cyprus Minerals Co.

## OPINION

ZLAKET, Justice.

We accepted review to determine whether, and to what extent, termination of post-injury employment for misconduct affects an employee's right to recover workers' compensation benefits for loss of earning capacity arising out of the earlier industrial injury. We also briefly address the consequences of an employee's post-injury return to work at his or her previous place of employment. We seek to resolve the apparent conflicts between the court of appeals' opinions in these cases.

*THE GIBSON CASE*

On December 22, 1977, Daniel T. Gibson sustained a work-related neck injury resulting in a 5% permanent partial impairment of the whole person. At the time, he was employed as an administrative sergeant with the Department of Public Safety (DPS). The State Compensation Fund accepted his claim and paid benefits. Gibson thereafter returned to the same job with no reduction in wages.

In July of 1980, DPS terminated Gibson for violations of merit system rules. These infractions stemmed from off-duty misconduct involving an altercation, an extramarital relationship, and excessive alcohol consumption. After his termination, Gibson worked intermittently at a variety of jobs. At the time of his Industrial Commission hearing on the issue of lost earning capacity, Gibson was employed as an eligibility worker for the Arizona Department of Economic Security (DES). He was earning less money than he had in his job with DPS.

Gibson admitted at the hearing that he was physically capable of performing the duties of his former job with DPS, and that his own misconduct had caused termination of that employment. The Fund nonetheless sought to elicit testimony from Robert H. Taylor, a vocational rehabilitation expert

and labor market consultant, that "but for the Respondent's voluntary misconduct and the resulting termination of employment, he would have been able to continue working as an administrative sergeant and that he would not have a loss of earning capacity due to the disability from the work injury." The administrative law judge rejected this testimony, finding no authority for the Fund's contention that Gibson, by his misconduct, had "voluntarily removed himself" from the labor market and was therefore entitled to nothing. Following the hearing, the judge issued an award for lost earning capacity arising out of Gibson's permanent partial disability.

After exhausting administrative review, the employer and carrier filed a special action in the court of appeals, urging that the administrative law judge had improperly excluded Mr. Taylor's testimony. They argued that Gibson's termination for misconduct, rather than the industrial injury, caused his reduction in earnings, and that he therefore should not have received an award for lost earning capacity. The court of appeals, with one judge dissenting, affirmed the award. *Arizona Dept. of Public Safety v. Industrial Commission*, 170 Ariz. 275, 823 P.2d 1283 (Ct.App.1991). We also affirm the award and approve the majority opinion of the court of appeals.

### THE KINNARD CASE

On March 6, 1989, Randall Kinnard suffered multiple injuries in an explosion while working for Cyprus Twin Buttes Corporation. In April, after the doctors released him for light duty, his employer assigned him to monitor a control board. Although this had been only a small part of Kinnard's pre-injury duties, and was significantly less demanding than his earlier job, his rate of pay remained unchanged.

Cyprus required Kinnard to take a drug test upon his return in mid-April. The test results, received only a few days after Kinnard went back to work, were apparently positive for marijuana. Cyprus immediately fired him. The employer and its carrier then took the position that compensation benefits were terminated as of April 17, 1989. Despite substantial effort to find other employment, Kinnard was out of work until October 11, 1989, when he secured a job as a security guard at the Arizona State Fair.

Following an Industrial Commission hearing, the administrative law judge ruled in part as follows:

> The evidence establishes the sole reason the applicant did not continue working in the position [monitoring a control board] is that he tested positive for marijuana on a drug screening test.... The applicant was terminated from the employment for a reason unrelated to the industrial injury and the reason was completely within his control. In this case, the predominant cause of his changed economic status was of his own making and he should be treated the same as an uninjured worker. *See* generally *Bryant v. Industrial Commission*, 21 Ariz.App. 356, 529 [519] P.2d 209 (1974). It is found, therefore the applicant does not have a loss in earning capacity relative to the industrial injury and is not entitled to temporary compensation benefits after April 17, 1989.[1]

The court of appeals, with one judge dissenting, affirmed this denial of benefits. *Kinnard v. Industrial Commission*, 170 Ariz. 281, 823 P.2d 1289 (Ct.App.1991). Kinnard petitioned for review. Cyprus cross-petitioned. We hereby set aside the award and remand the matter for further proceedings. We also vacate the majority opinion of the court of appeals.

### TERMINATION FOR MISCONDUCT

■ The basic rule is simply stated: "[T]he law should compensate for losses attributable to industrial injuries, but not for losses attributable to other factors." *Fletcher v. Industrial Commission*, 120

---

1. The judge further found that because "an injured worker who left post-injury employment for reasons unrelated to the injury can re-establish entitlement to temporary disability benefits by obtaining and holding suitable post-injury employment," Kinnard was entitled to temporary partial compensation benefits after October 12, 1989, the date he began his job at the state fair. The parties raise no issue with respect to this ruling.

Ariz. 571, 573, 587 P.2d 757, 759 (Ct.App. 1978). Application of this rule, unfortunately, is not always so easy. Ordinarily, an injured worker bears the initial burden of proof on the issue of lost earning capacity. *Zimmerman v. Industrial Commission*, 137 Ariz. 578, 580, 672 P.2d 922, 924 (1983); *Franco v. Industrial Commission*, 130 Ariz. 37, 633 P.2d 446 (Ct.App.1981). He or she may meet this burden in various ways, such as by demonstrating: (1) an unsuccessful good faith effort to obtain suitable employment; or (2) the type of work that can be performed despite the industrial injury, and the amount to be earned in such employment (usually the subject of expert testimony); or (3) membership in the "odd-lot" category (able to provide such limited services that no stable labor market exists). *Franco*, 130 Ariz. at 39, 633 P.2d at 448 (good faith effort; use of expert testimony); *Employers Mut. Liab. Ins. Co. of Wisconsin v. Industrial Commission*, 25 Ariz.App. 117, 119–20, 541 P.2d 580, 582–83 (1975) ("odd-lot" classification). The employee can offer any relevant evidence tending to show that termination from employment, or inability to obtain suitable work, is wholly or partially due to the industrial injury or its resulting limitations. A.R.S. § 23–1044(G). *See also Gallegos v. Industrial Commission*, 144 Ariz. 1, 4, 695 P.2d 250, 253 (1985) ("To meet his burden, the worker who petitions for rearrangement need 'only show that his inability to secure or retain work is at least partially injury related.' ") (quoting *Laker v. Industrial Commission*, 139 Ariz. 459, 462, 679 P.2d 105, 108 (Ct.App.1984)).

■ If and when the worker meets this initial burden of proof, it falls upon the employer or carrier to go forward with evidence demonstrating the availability of suitable employment and/or the lack of a causal relationship between the claimed loss of earning capacity and the injury. *Zimmerman*, 137 Ariz. at 580–83, 672 P.2d at 924–27; *Wiedmaier v. Industrial Commission*, 121 Ariz. 127, 129, 589 P.2d 1, 3 (1978). Again, any relevant evidence on the issue may be presented. *See* A.R.S. § 23–1044(G).

■ In the real world, of course, the reasons why a previously injured worker cannot secure employment at equal or higher pay than before are often complex. Additionally, various factors may affect whether a job is "suitable" and/or "available." *Zimmerman*, 137 Ariz. at 582–84, 672 P.2d at 926–28. The administrative law judge must make a determination, based on all the facts and circumstances, whether and to what extent the worker's disability has prevented employment. A.R.S. § 23–1044(G); *Fletcher*, 120 Ariz. at 574, 587 P.2d at 760 ("Thus, the result in a given case depends largely upon whether there has been an adequate factual showing that, following a non-work related termination, the industrial disability actually interfered with the worker's ability to obtain work."); *Schnatzmeyer v. Industrial Commission*, 77 Ariz. 266, 270, 270 P.2d 794, 797 (1954) ("[I]t is the Commission's duty to consider whether and to what extent [the employee's] disabilities prevented employment."). This determination must be made in each case, regardless of whether the employee resumed the former job and then lost it, or the reasons why it may have been lost.

■ In *Fletcher*, our court of appeals stated:

... [W]hen a claimant loses employment as a direct result of economic or other reasons unrelated to his injury, he may nevertheless be entitled to compensation if he is able to show that the difficulties in finding other employment are due to his injury....

Although the immediate cause of claimant's loss of his most recent employment was a reduction in work force owing to economic conditions, claimant would still be entitled to compensation if his back condition was a limiting factor in his search for employment, and, therefore, partly responsible for his inability to find other employment. (Citations omitted).

120 Ariz. at 573–74, 587 P.2d at 759–60. The same analysis applies here. As long as limitations resulting from an industrial injury contribute to a claimant's inability to

secure employment at pre-injury wage levels, compensation benefits are payable for loss of earning capacity. If, on the other hand, the injury and its sequelae play no part in the worker's inability to find suitable employment, there is no compensable loss of earning capacity.

■ Misconduct should be—and is—irrelevant except as it pertains to this causation question. Payment of benefits does not depend on a claimant's good moral character, but is based simply on an injury within the scope of the workers' compensation statutes. *Marriott Corp. v. Industrial Commission,* 147 Ariz. 116, 120–21, 708 P.2d 1307, 1311–12 (1985) (misrepresentation on employment application does not bar compensation benefits); *W.F. Dunn Sr. & Son v. Industrial Commission,* 160 Ariz. 343, 348, 773 P.2d 241, 246 (Ct.App. 1989) (pre-injury felony conviction is merely a factor to be considered in determining job suitability and availability).

■ Termination reasons unrelated to the industrial injury, such as layoff, strike, economic conditions, or misconduct become significant only where the evidence demonstrates that they, rather than claimant's disability, caused the subsequent inability to secure work. *See, e.g., Oquita v. Industrial Commission,* 120 Ariz. 610, 587 P.2d 1187 (Ct.App.1978) (commission should have considered the extent to which laid-off petitioner's difficulty in finding employment was related to his injury); *United Riggers Erectors v. Industrial Commission,* 131 Ariz. 258, 640 P.2d 189 (Ct.App. 1981) (incarceration of employee neither excused him from complying with the re-

quirements of the workers' compensation statutes nor precluded him from receiving benefits if he satisfied his burden of proof).[2]

We do not seek to encourage misconduct by seeming to reward it. We merely recognize that people frequently make mistakes, which of course is an important reason to have a workers' compensation system in the first place. Like the court of appeals' majority in *Gibson,* we fail to see the wisdom in holding that an employee who loses a post-injury job because of misconduct voluntarily forfeits benefits for a loss of earning capacity which, depending on the nature and extent of disability, may be quite profound. The purpose of the Arizona workers' compensation scheme, "to dispense with, as much as possible, the litigation between employer and employee and to place upon industry the burden of compensation," *Marriott,* 147 Ariz. at 121, 708 P.2d at 1312, would hardly be served by such a punitive rule.

*RETURN TO WORK*

■ We specifically reject the notion that a worker's return to pre-injury employment at the same pay creates a conclusive presumption of no lost earning capacity. To hold otherwise would effectively mean that the employee could never leave that job without forfeiting compensation benefits. Although "[p]ost injury earnings may raise a presumption of at least commensurate earning capacity," *Maness v. Industrial Commission,* 102 Ariz. 557, 559, 434 P.2d 643, 645 (1967), that presumption is rebuttable.[3] Moreover, it does not preclude later adjustments if changing condi-

---

**2.** We have been asked to adopt the reasoning of *Todd v. Hudson Motor Car Co.,* 328 Mich. 283, 43 N.W.2d 854 (1950), holding that an employee discharged for criminal activities (gambling) at work is not entitled to compensation for the resultant loss of earnings. *Id.* 43 N.W.2d at 856. We decline to adopt such an immutable rule that ignores the evidentiary burdens, causation requirements, and remedial purposes of Arizona's statutory scheme. Rather, we agree with the Florida court's opinion that whether an employee's discharge for misconduct bars compensation is a matter to be resolved in the political forum. Absent specific legislation, such a rule would "hinge eligibility for such benefits upon a highly subjective determination concerning the

degree of a claimant's culpability." *Garrick v. William Thies & Sons,* 547 So.2d 232, 235 (Fla. Dist.Ct.App.1989). *See also Arkansas Power & Light Co. v. Hooks,* 295 Ark. 296, 749 S.W.2d 291, 294 (1988) (Purtle, J. dissenting) (courts should not judicially legislate a statutory type penalty for disabled workers later discharged for misconduct).

**3.** "[T]his presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity." *Arden–Mayfair v. Industrial Commission,* 158 Ariz. 580, 584, 764 P.2d 341, 345 (Ct.App.1988).

tions result in decreased earning capacity due to the injury. *Id.;* A.R.S. § 23–1044(F).

### RESOLUTION OF GIBSON

■ We view the evidence "in the light most favorable to sustaining the findings and award of the Industrial Commission and will not set aside the award if it is based upon any reasonable interpretation of the evidence." *Franco v. Industrial Commission,* 130 Ariz. 37, 39, 633 P.2d 446, 448 (Ct.App.1981). Here, evidence supports the conclusion that Gibson suffered a loss of earning capacity due, at least in part, to his disability. Claimant rebutted any presumption of no lost earning capacity by demonstrating his inability to obtain other employment after termination. He testified that a number of job applications and attempts to work were unsuccessful due to his disability. Although Gibson conceded that he was physically able to perform the duties of his previous employment as an administrative sergeant, that job was realistically unavailable to him as of the hearing date.[4] Thus, we believe Gibson met his initial burden.

The employer and carrier, on the other hand, did not show that Gibson's inability to find work at a commensurate pay scale was due to his previous misconduct or some other cause unrelated to his injury. Even if misconduct was the reason Gibson could not reacquire his previous job as an administrative sergeant, the evidence supported the conclusion that his inability to obtain other suitable employment was due, at least in part, to his physical disability.

■ It was uncontradicted that as of the time of the hearing, claimant could fully perform his duties as a DES eligibility worker, the employment upon which the award was ultimately based. Although the employer and carrier claimed that Gibson could obtain a job as a private investigator trainer at no loss of earning capacity,[5] the

evidence conflicted as to his ability to perform such employment. Claimant's expert testified that Gibson did not have the recent knowledge to perform the job, and that it also might have been beyond his physical limitations. This factual dispute was for the administrative law judge to resolve, and there is no cause for us to disturb his findings.

■ We agree with the court of appeals that the exclusion of Mr. Taylor's testimony about Gibson's loss of the sergeant's job was at most harmless error. As we have indicated, claimant's termination was a factor to be considered, along with all others, in determining the cause of any lost earning capacity. The carrier and employer were entitled to offer proof that the reason Gibson was unable to secure suitable employment was his misconduct, and not his injury. A.R.S. § 23–1044(G). Any error was harmless, however, because claimant conceded that he was able to perform the job of administrative sergeant, that it was suitable work, and that his own misconduct caused the loss of that employment. According to the offer of proof in the record, this is essentially what the expert would have said, if allowed.

■ As previously indicated, we reject the argument that Gibson, by his misconduct, forfeited suitable employment and voluntarily removed himself from the labor market, making him ineligible for future benefits despite his permanent disability. Such an approach does little to serve the remedial goals of the workers' compensation system. *Fullen v. Industrial Commission,* 122 Ariz. 425, 595 P.2d 657 (1979) (compensation act is liberally construed to accomplish its purpose of protecting injured workers and compensating valid claims). Furthermore, because the argument rests entirely on the employee's culpability, it makes no more sense in a no-fault compensation system than would denial of benefits to a claimant who has

---

4. Loss of earning capacity is determined as of the time of the hearing. *Maness,* 102 Ariz. at 558, 434 P.2d at 644.

5. We note that the Fund's expert, Mr. Taylor, admitted on cross-examination that claimant's termination from DPS for misconduct would not have prevented him from obtaining this job as a trainer.

caused his or her own industrial injury in the first instance.

The award is affirmed, as is the majority opinion of the court of appeals.

### RESOLUTION OF KINNARD

In *Kinnard*, the court of appeals correctly observed that causation is an issue of fact to be resolved by the administrative law judge. 170 Ariz. at 283, 823 P.2d at 1291. We disagree, however, with the majority's suggestion that because the compensation scheme requires a loss to be caused by an industrial disability, the legislature must have "intended" to place the burden on claimant to prove that his failure to find work was *not* due to his own misconduct. *Id.* As noted previously, the well-settled law of this state allows a claimant to carry the burden of proving lost earning capacity in a number of ways. It does not require the claimant to show, however, that the industrial injury was the *sole* cause of the loss. Such a requirement would effectively deprive many genuinely injured workers of benefits when unrelated causes have combined with their disabilities to make it difficult or impossible to secure other employment. It would also provide unscrupulous employers with a powerful incentive to fire post-injury employees (and terminate their compensation benefits) on grounds of "misconduct," or to make working conditions so miserable that they quit, knowing that most of those employees could never overcome such an onerous burden of proof. Again, given the remedial purposes of the compensation scheme, it is difficult to discern such a legislative intent in the statutes.

■ Here, Kinnard testified to his substantial efforts to find other employment following the termination. During much of this time, his physical activities were still limited, and he carried visible evidence of his injuries. This evidence was sufficient to shift the burden of going forward to the employer, *Felker v. Industrial Commission*, 134 Ariz. 19, 653 P.2d 369 (Ct.App. 1982), who then was obligated to show that Kinnard's injuries and resulting disability had nothing to do with his failure to secure other employment. No such showing was made. Based on the record before us, it is beyond question that claimant's physical limitations contributed to his economic loss.

The administrative law judge's reliance on *Bryant v. Industrial Commission*, 21 Ariz.App. 356, 519 P.2d 209 (1974) was misplaced. In our judgment, that case must be viewed in the context of its specific facts. The employee in *Bryant* successfully held several post-injury jobs at no reduction in pay. Almost nine years after the injury, he quit his Arizona employment to take a job in Colorado. Unfortunately, that work lasted only a few days because project funding was terminated. When the employee returned to Arizona, he could not find work at his former level of compensation because of a "difficult job market which existed for all workers, not only the disabled ones." 21 Ariz.App. at 357, 519 P.2d at 210. The court specifically found that claimant "failed in his burden to prove that he now had a reduction in earning capacity as a result of the ... injury." *Id.* Thus, *Bryant* is clearly distinguishable.

■ Finally, we decline cross-petitioners' invitation to overrule *Doles v. Industrial Commission*, 167 Ariz. 604, 810 P.2d 602 (Ct.App.1990) (loss of earning capacity must be based on employee's ability to perform work available in a competitive labor market). We agree with the dissent below that the administrative law judge erred in "finding that the monitoring job represented the claimant's earning capacity." 170 Ariz. at 286, 823 P.2d at 1294. We also concur that the ruling in *Doles* applies here because "there was no evidence that any job like the one given to the claimant was available on the open labor market." *Id.*

We set aside the award and vacate the court of appeals' majority opinion. We remand the matter for further proceedings consistent with this decision.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.