RENT A CENTER, Petitioner Employer,

Travelers Insurance Company, Petitioner Insurance Carrier,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Bert Paul, Respondent Employee.

No. 2 CA–IC 97–0020.

Court of Appeals of Arizona, Division 2, Department A.

Feb. 26, 1998.

The Industrial Commission of Arizona by Anita R. Valainis, Phoenix, for Respondent.

Frank W. Fry, Tucson, for Respondent Employee.

## OPINION

DRUKE, Chief Judge.

¶ 1  Petitioners, Rent A Center (RAC) and its insurance carrier, Travelers Insurance Company, seek special action review of the Industrial Commission's award of permanent partial disability compensation of $340.93 per month to RAC's former employee, Bert Paul. We view the evidence " 'in the light most favorable to sustaining the findings and award of the Industrial Commission and will not set aside the award if it is based upon any reasonable interpretation of the evidence.' " *Arizona Dep't of Pub. Safety v. Indus. Comm'n,* 176 Ariz. 318, 324, 861 P.2d 603, 609 (1993), *quoting Franco v. Indus. Comm'n,* 130 Ariz. 37, 39, 633 P.2d 446, 448 (App.1981). We set forth the relevant facts as they pertain to the issues petitioners raise.

¶ 2  Paul injured his back while employed by RAC as an account representative. He applied for workers' compensation benefits and was awarded permanent partial disability compensation of $432.45 per month. Petitioners protested the award, and after a series of hearings, the administrative law judge (ALJ) reduced the award to $340.93 per month. Petitioners requested administrative review, the ALJ affirmed the award, and this statutory special action followed.

### Lost Earning Capacity

¶ 3  Petitioners contend the ALJ erred by adopting the testimony of Paul's labor market expert, Karen Miller, in calculating lost earning capacity rather than the testimony of their expert, Lisa Goldman, arguing Miller excluded casino and commission work in determining that Paul's earning capacity was $4.25 to $6.00 per hour. We find no error.

¶ 4  Miller testified she excluded such casino-specific jobs as slot attendant and cage cashier in determining Paul's earning capaci-

Kathleen L. Hoskins, P.C. by Kathleen L. Hoskins, Phoenix, for Petitioners Employer and Carrier.

ty because she did not think "it would be an accurate measure of employability to base earning capacity on jobs which are unique to the casinos and are not represented in the broader labor market." Miller said, however, she did include other "jobs available within the casinos that are available in the broad labor market," such as cook or parking lot attendant.

¶ 5 Miller also explained why she had excluded commission jobs in determining earning capacity:

> With regard to commission, I think that there are too many variables involved in a commission position. It's real hard to measure how an individual's personality will affect their ability to earn commission. It's real hard to measure how they will succeed if it's a situation where they have not had any experience at all with this particular product or service in the past.
>
> So I believe that there's just too many unknowns and too many variables to allow a realistic measure of earning capacity based on commission.

¶ 6 Miller thus provided a reasonable basis for her opinion on Paul's earning capacity and the ALJ was free to adopt it. *Carousel Snack Bar v. Indus. Comm'n,* 156 Ariz. 43, 749 P.2d 1364 (1988) (ALJ resolves conflicts in expert testimony and, in doing so, may consider their qualifications, experience, and the basis for their opinions). Moreover, petitioners cannot show they were prejudiced by the ALJ's adopting Miller's opinion. The ALJ used $6.00 per hour to calculate Paul's lost earning capacity, and that hourly rate falls within Goldman's range of $5.85 to $7.37 per hour.

### Sheltered Work

■ ¶ 7 When Paul was released to work with a 35–pound lifting limitation, RAC twice refused to re-employ him. After RAC received notice of the initial award, however, it offered to re-employ Paul in his original position, accommodating his lifting limitation by making available the store's one delivery person to help Paul whenever he needed to move, deliver, or repossess merchandise. Petitioners contend that ALJ improperly characterized RAC's offer as "sheltered em-

ployment" under *Doles v. Indus. Comm'n,* 167 Ariz. 604, 606, 810 P.2d 602, 604 (App. 1990), and thus incorrectly excluded it in determining Paul's earning capacity.

■ ¶ 8 Sheltered employment results when an employer retains "at their previous wages all employees disabled as the result of on-the-job injuries." *Allen v. Indus. Comm'n,* 87 Ariz. 56, 67, 347 P.2d 710, 718 (1959). Consequently, sheltered employment does not reflect

> the employee's earning capacity in a competitive situation but rather a company policy which, if abrogated for any reason by the employer, will force the employee into a position where he will be unable, because of his injuries, to continue to earn such wages or to secure equivalent employment.

*Id.* at 68, 347 P.2d at 718. An employee's earning capacity "cannot be accurately measured by make-work or sheltered work." *Doles,* 167 Ariz. at 606, 810 P.2d at 604. "[It] must be measured by competition in the open labor market." *Id.* at 607, 810 P.2d at 605.

¶ 9 Here, Miller testified she had contacted five other furniture rental businesses in the Tucson area and found that none of them would hire Paul as an account representative with his lifting limitation, nor could any of them provide the accommodations RAC had offered. Goldman said she had contacted approximately four such businesses and none had jobs suitable for Paul. The record thus supports the ALJ's characterization of RAC's job offer as sheltered employment because " 'other employers would not hire [Paul] with [his] limitations at a comparable wage level.' " *Id.* at 607, 810 P.2d at 605, *quoting Peoples v. Cone Mills Corp.,* 316 N.C. 426, 342 S.E.2d 798, 806 (1986). The ALJ correctly excluded RAC's job offer in determining Paul's lost earning capacity.

### Preemption

■ ¶ 10 Petitioners argue that the ALJ mislabeled RAC's job offer as sheltered employment, contending that the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 through 12213, required RAC to make reasonable accommodation to employ

Paul and that "[t]he ADA preempts all state workers' compensation law." Petitioners make a similar argument based on Arizona's Employment Discrimination Act (EDA), A.R.S. §§ 41–1461 through 41–1465, because the EDA also requires an employer to make reasonable accommodation in hiring the handicapped.

▮ ¶ 11  Although the enactment of the ADA and the EDA may have some impact on the application of the sheltered employment doctrine, this could only happen if the Acts apply to the specific facts of a case. The facts here do not invoke either Act. Under the ADA, it is unlawful for an employer to discriminate against a "qualified individual with a disability." 42 U.S.C. § 12112. A "qualified individual with a disability" is a person who has a disability but who can, either without any accommodation or with a reasonable accommodation, "perform the essential functions of the employment position." 42 U.S.C. § 12111(8). The language of the EDA parallels that of the ADA, forbidding discrimination against a "qualified handicapped individual" who, with or without reasonable accommodation, can perform the position's essential functions. §§ 41–1461(7), 41–1463(L). The ADA and EDA do not apply if no accommodation will enable the employee to perform an essential function of a job. *McCollough v. Atlanta Beverage Co.*, 929 F.Supp. 1489 (N.D.Ga.1996); *Matos v. City of Phoenix*, 176 Ariz. 125, 859 P.2d 748 (App.1993).

¶ 12  Whether a function is essential is determined on a case-by-case basis, taking into consideration all relevant factors, including the employer's judgment, whether the position exists to provide for the performance of the function, and the number of employees available to perform the function. 29 C.F.R. § 1630.2(n). RAC asserts that repossessing furniture, appliances, and other property is not an essential function of the account representative position. The record belies this assertion. It shows that a RAC store has only a manager, an assistant manager, two account representatives, and one delivery driver. All are full-time employees. The duties of an account representative include repossessing property. There is no one else

available at a RAC store to perform repossessions. Moreover, repossessions are closely connected with the account representative's servicing of his particular accounts. We thus conclude that repossessing property, which entails moving furniture, appliances, and other property from the customer's home to the RAC store, is an essential function of the account representative's job.

¶ 13  It is also clear that no accommodation can make Paul able to move furniture and appliances himself. If Paul, with his lifting limitation, were to work at RAC as an account representative, his essential duties could not be completed without allocating an essential function to another employee. This the Acts do not require. *McCollough; Reigel v. Kaiser Foundation Health Plan of N.C.*, 859 F.Supp. 963 (E.D.N.C.1994); *Matos.*

¶ 14  Thus, the accommodation RAC offered Paul was not required by the ADA or the EDA; Paul is neither a "qualified individual with a disability" under the ADA nor a "qualified handicapped individual" under the EDA. Because neither the ADA nor the EDA applies under these facts, we need not address the preemption issue.

### Causation

▮ ¶ 15  Petitioners argue that Paul suffered no loss of earning capacity because his injury did not cause his failure to find work, citing *Arizona Dep't of Pub. Safety*, 176 Ariz. at 323, 861 P.2d at 608 (no compensable loss of earning capacity if "injury and its sequelae play no part in the worker's inability to find suitable employment"). The worker is still entitled to compensation, however, if the injury is a " 'limiting factor in [the worker's] search for employment, and, therefore, partly responsible for his inability to find other employment.' " *Id.* at 322, 861 P.2d at 607, *quoting Fletcher v. Indus. Comm'n*, 120 Ariz. 571, 574, 587 P.2d 757, 760 (App.1978). Compensation is payable "[a]s long as limitations resulting from an industrial injury contribute to a claimant's inability to secure employment at *pre-injury wage levels.*" *Arizona Dep't of Pub. Safety*, 176 Ariz. at 322–23, 861 P.2d at 607–08 (emphasis added).

**410**

¶ 16   In this case, both Miller and Goldman agreed that Paul was unable to secure employment at his pre-injury wage level unless he accepted RAC's job offer. Paul had no obligation to accept such sheltered employment. " 'This could place a worker in the tenuous position of working under unbearable or demeaning circumstances should an unscrupulous employer desire to eliminate (benefits) by coercing the worker into refusing an employer's offer of employment or coercing him subsequent to returning to work.'" *Doles,* 167 Ariz. at 608, 810 P.2d at 606, *quoting Payne v. Country Pride Foods, Ltd.,* 525 So.2d 106, 107 (La.Ct.App.1988).

¶ 17   The award is affirmed.

FLÓREZ, P.J., and BRAMMER, J., concur.