NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KARSTEN MANUFACTURING, *Petitioner Employer*,

SENTRY CLAIMS SERVICE, *Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

ANICETO SIGALA, *Respondent Employee*.

No. 1 CA-IC 15-0086
FILED 9-29-2016

Special Action - Industrial Commission

ICA Claim No.  20101-180537
Carrier Claim No. 51C848829
Layna Taylor, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Jardine Baker Hickman & Houston, Phoenix
By K. Casey Kurth
*Counsel for Petitioners Employer/ Carrier*

Industrial Commission of Arizona, Phoenix
By Jason Porter
*Counsel for Respondent*

Snow Carpio & Weekley, PLC, Phoenix
By Chad T. Snow
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Randall M. Howe and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

**¶1**　　　　This is a special action review of an Industrial Commission of Arizona (ICA) award and decision upon review for permanent partial disability benefits in favor of Aniceto Sagala (Claimant). The petitioner employer, Karsten Manufacturing (Karsten) argues the administrative law judge (ALJ) improperly refused to consider its December 2014 offer of employment to Claimant. Because the offer of employment was untimely produced after the close of evidence and the evidence of record supports the ICA award, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**　　　　Claimant worked for twenty-five years at Dolphin Precision Investment Castings, an independent subsidiary of Karsten. In April 2010, Claimant injured his right shoulder while lifting wheels weighing up to 150 pounds each. Claimant filed a workers' compensation claim, which was accepted for benefits by the petitioner carrier, Sentry Claims Service (Sentry).

**¶3**　　　　Claimant attempted conservative medical treatment but ultimately underwent two shoulder surgeries performed by Evan Lederman, M.D., a board certified orthopedic surgeon. In February 2013, after Claimant completed rehabilitation therapy, Dr. Lederman found him medically stationary and released him to return to work with physical limitations. The ICA entered its findings and award, determining Claimant

---

[1]　　　　We view the evidence in the light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002) (citing *Salt River Project v. Indus. Comm'n*, 128 Ariz. 541, 544-45 (1981)).

suffered no loss of earning capacity (LEC) and therefore did not qualify for additional compensation. *See* Ariz. Rev. Stat. (A.R.S.) § 23-1047(A).[2] Claimant timely protested.

**¶4**　　　　At two separate hearings, the ALJ heard testimony from Claimant, two of his supervisors, and Dr. Lederman. She also considered labor market reports from Richard A. Prestwood and Rebecca Lollich. The ALJ then entered an award for unscheduled permanent partial disability benefits. Karsten timely requested administrative review and asked the ALJ to reopen the hearings to allow additional evidence regarding a written offer of employment it had made to Claimant in December 2014. The ALJ supplemented and affirmed the award, declining to reopen the evidence to consider the untimely offer of employment. Karsten timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

**¶5**　　　　On appeal, Karsten argues the evidence does not support the ALJ's award of permanent partial disability benefits because she failed to consider the December 2014 written offer of employment in determining the LEC. Our review is limited to determining whether the ALJ acted "without or in excess of its power" in doing so and whether the findings of fact support the ALJ's decision upon review. A.R.S. § 23-951(B). We defer to the ALJ's factual findings, but review questions of law *de novo. Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003) (citing *PFS v. Indus. Comm'n*, 191 Ariz. 274, 277 (App. 1997)).

**¶6**　　　　When establishing a claimant's LEC, the ALJ must determine "as near as possible" whether the claimant can sell his services in the open, competitive labor market, and if so, for how much. *Davis v. Indus. Comm'n*, 82 Ariz. 173, 175 (1957). Ordinarily, the injured worker has the burden of proving his LEC. *See, e.g., Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580 (1983). The claimant can meet this burden by presenting evidence he is unable, by virtue of his impairment, to return to date-of-injury employment and has made a good faith effort to obtain other suitable employment. *See D'Amico v. Indus. Comm'n*, 149 Ariz. 264, 266 (App. 1986) (quoting *Franco v. Indus. Comm'n*, 130 Ariz. 37, 39 (App. 1981)) (citations omitted). If the claimant establishes these efforts were made and were unsuccessful, the burden of going forward with contrary evidence shifts to the employer and

---

2　　　　Absent material revisions from the relevant date, we cite a statute's current version.

carrier. *See Zimmerman*, 137 Ariz. at 580 (citations omitted). Alternatively, the claimant may employ a labor market expert "to show the type of work the claimant is able to perform with his industrial injuries, and the amount which would be earned in such employment." *D'Amico*, 149 Ariz. at 266 (quoting *Franco*, 130 Ariz. at 39).

¶7 In this case, Claimant was not able to return to his date-of-injury employment as a result of the residual physical limitations of his industrial injury. Dr. Lederman released him to return to work, but restricted him from lifting more than twenty pounds or any amount of weight overhead. In response to a video of an employee grinding golf club heads, Dr. Lederman testified Claimant could only perform the task, which required repetitive motion, with frequent breaks and for a limited number of hours per shift.

¶8 Claimant returned to modified work at Karsten, where he was assigned five hours of sandblasting and five hours of grinding during a ten-hour shift. Claimant was not provided with frequent breaks and, in fact, was urged to work more quickly; during the workday, Claimant received two twelve-minute breaks and a thirty-minute lunch. He experienced increasing shoulder pain, which he reported to his supervisor. Claimant testified he feared additional injury to his shoulder because Karsten required him to work in excess of Dr. Lederman's recommended physical limitations.

¶9 Claimant returned to Dr. Lederman in January and February 2014. At that time, he reported Karsten was not respecting his physical limitations and he had increasing shoulder pain. In February 2014, Dr. Lederman provided Claimant with an additional physical limitation of two hours of pushing and pulling at the grinding belts. When Claimant provided Karsten with this new limitation, he was sent home from work, and, at the time of the ICA hearings, had not been contacted to return.

¶10 Although Claimant presented testimony from Prestwood regarding his residual earning capacity, the ALJ adopted the opinion of Lollich. Lollich testified Claimant's most likely employment would be in a light janitorial capacity earning a roll-back wage of $7.38 to $8.00 per hour, for a post-injury earning capacity of $1,332.83 per month and monthly disability benefits of $1,084.49. In accordance with this opinion, the ALJ awarded Claimant monthly permanent disability benefits of $1,084.49.

¶11 In its request for review, Karsten asked the ALJ to reopen the hearings so it could present new evidence of an offer of employment made

to Claimant in December 2014. On administrative review, the ALJ declined to reopen the hearings to consider the new evidence, noting she had subpoenaed Peter Poleon, the Karsten representative who had made the December 2014 employment offer, three separate times and he never appeared to testify.

¶12        Pursuant to Arizona Administrative Code (A.A.C.) R20-5-155.B, non-medical records must be filed at the ICA at least fifteen days before the first hearing. A continued hearing to present additional evidence may be requested at the conclusion of the last scheduled hearing, but is granted at the ALJ's discretion. *See* A.A.C. R20-5-156.B. The ALJ may deny the request if it appears that, "with the exercise of due diligence, the evidence or testimony could have been produced or the evidence or testimony would be cumulative, immaterial, or unnecessary." A.A.C. R20-5-156.C.

¶13        Here, the record reflects Karsten knew about Claimant's revised physical limitations in February 2014 when it sent Claimant home until he could obtain additional clarification of the two-hour push-pull restriction. ICA hearings were conducted in June and July 2014, and the hearing record did not close until August 2014. Although Karsten acknowledges the four-month gap between the close of the hearings and its new offer of employment, it provides no explanation for the delay. Based upon these facts, we conclude the ALJ did not abuse her discretion by refusing to schedule a continued hearing.

## CONCLUSION

¶14        The ALJ's award and decision upon review is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA