609 So.2d 683 (1992)
Mildred SHAW, Appellant,
v.
PUBLIX SUPERMARKETS, INC. and the Hartford Insurance Co., Appellees.
No. 91-2547.
District Court of Appeal of Florida, First District.
December 1, 1992.
*684 Bill McCabe, of Shepherd, McCabe & Cooley, Longwood; Michael B. Murphy, of Stanley, Wines, Bennett, Murphy, Spanjers & Helms, P.A., Winter Haven, for appellant.
Judith J. Flanders, of Lane, Trohn, Clarke, Bertrand & Williams, P.A., Lakeland, for appellee.
PER CURIAM.
Claimant sustained serious injuries to her upper extremity and dominant right hand in an accident on September 29, 1989, as an employee in the Publix supermarket bakery department. Claimant appealed the provision of the Order of the Judge of Compensation Claims (JCC) that denied permanent total disability (PTD) benefits claimed from April 24, 1990. We find it necessary to reverse the order, because the record lacks substantial evidence to support the denial of PTD benefits, and Claimant met the burden set forth in section 440.15(1)(b), Florida Statutes (1989), "to establish that [s]he is not able uninterruptedly to do even light work due to physical limitation." On remand, the JCC shall determine whether there is an issue of "double benefits" and an entitlement to credit to Employer/Carrier (E/C) for the wage-loss benefits ordered payable from November 24, 1990. See Swift & Co. v. Surrency, 467 So.2d 740, 741-42 (Fla. 1st DCA 1985).
The JCC found the number of job searches conducted by Claimant was "so few in number to be insufficient to constitute a good faith job search for any period." In Pan American Bank v. Glinski, 584 So.2d 52, 53-54 (Fla. 1st DCA 1991), however, we held that a job search is not a prerequisite for obtaining PTD benefits if a claimant demonstrates inability to engage in gainful employment due to physical limitations. See Carter v. City of Venice, 584 So.2d 577 (Fla. 1st DCA 1991); Ernie Haire Ford, Inc. v. Hamilton, 483 So.2d 555 (Fla. 1st DCA 1986); Thompkins & Sons Lawn Spray v. Brooks, 452 So.2d 103 (Fla. 1st DCA 1984).
Dr. Lane, an orthopedic surgeon, treated Claimant from the day of injury. In his February 16, 1990, report, Dr. Lane noted Publix was very anxious to get Claimant back to work in some capacity, but he said that would be "fairly futile at this point." Two months later, he said Claimant continued to have the same sort of problems with her hand. He recommended vocational rehabilitation because he did not think Claimant could return to her previous position. By the time of discharge from occupational therapy in April 1990, Claimant had received 54 treatments given 2-3 times weekly. The discharge report said pain was a major obstacle to Claimant's progress, and sensation and wrist range motion remained impaired. Dr. Lane's April 24, 1990, report, indicated Claimant had essentially reached maximum medical improvement (MMI). Combining the impairments of the forearm, wrist, range of motion, and grip strength with more subjective analysis of the degree of pain and insensitivity, Dr. Lane gave Claimant a 66% permanent partial impairment of the upper extremity, corresponding to a 40% permanent impairment of the whole person.
In October 1990, Publix offered Claimant light-duty work putting price stickers on bakery containers. The labeling supervisor testified that labels, boxes and bags were brought to Claimant's work area, and Claimant was permitted to work standing or sitting, as needed. Repetitive and simple grasping with one hand was involved, although the medical testimony indicated such movements would cause Claimant considerable pain because of her prior underuse of the arm. Employer offered to change the room temperature, to place Claimant in a separate room, and to provide a cot to accommodate her needs. Claimant was allowed to work at her own pace with no established quotas. Employer allowed flexible arrival and departure times and periodic rest breaks. Claimant attempted *685 to do the work for about 22 hours over six days in late October 1990 but was unable to work more than 3 1/4 hours on any single day. She then discontinued working because she said it was too difficult and painful. These facts distinguish the case sub judice from U.S. Foundry & Manuf. Co. v. Serpa, 564 So.2d 559, 561 (Fla. 1st DCA 1990) and Broward County Sheriff's Off. v. Williams, 430 So.2d 968 (Fla. 1st DCA 1983).
E/C contend the light-duty working conditions were arranged to assist Claimant's recovery, but not because any medical evidence necessitated special requirements. Employer testified the labeling job typically is performed by its injured employees, and that it is necessary work for which outside employees would otherwise be hired. Claimant asserts that it was agreed she could not return to her former work tasks and that the labeling work was sheltered part-time employment.
Dr. Borrero, a physician specializing in reconstructive surgery, examined Claimant once, on March 11, 1991. He found Claimant had reached MMI prior to the visit, and he determined Claimant had a 10% permanent impairment of the body as a whole according to the AMA Guidelines. Dr. Borrero found Claimant had a full range of motion of the elbow, but wrist range of motion showed mild limitation. He diagnosed severe wrist injury and associated sensory nerve injury, but he indicated some of the limitation, disability, stiffness and excessive pain was due to Claimant's overprotection of the arm. Cf. Winn Dixie Stores, Inc. v. Grubb, 570 So.2d 1371 (Fla. 1st DCA 1990) (reversing PTD award as premature, where claimant had not reached overall MMI and the major obstacle to employability was claimant's perception of inability to work). Dr. Borrero said it was natural to be so protective, as Claimant feared something bad would happen to her, but he believed Claimant must force herself to use the hand more vigorously to ensure greater strength and flexibility and to reduce the pain. Dr. Borrero recommended hand therapy three times weekly for a 3-4 week period, as well as a work hardening program. He opined that Claimant was employable and capable of doing the labeling at Publix, but he indicated Claimant could do the labeling only 3 1/2 hours per day.
The rehabilitation nurse visited the job site at Publix and observed three people, two of whom were overtly disabled, doing the labeling. She understood that the work hours and conditions were flexible but that Claimant was expected to work five days a week. The nurse testified the labeling work was the only job offered to Claimant and that, in the nurse's opinion, Claimant was capable of doing the work.
In assessing entitlement to PTD benefits, the court may consider factors such as a claimant's actual physical impairment, work history, education and training, ability to do and obtain other work, and age. Dental Arts Lab, Inc. v. Constantino, 531 So.2d 999 (Fla. 1st DCA 1988). Because the medical evidence of Drs. Lane and Borrero is by deposition only, we are not in a position inferior to that of the JCC to interpret the record. H & A Frank's Constr., Inc. v. Mendoza, 582 So.2d 780, 781-82 (Fla. 1st DCA 1991).
E/C concede Dr. Borrero's determination of Claimant's ability to work was crucial to the JCC's finding, yet the doctor's opinion, rendered after only one medical visit 1 1/2 years after the injury, was that Claimant had reached MMI and could perform the labeling 3 1/2 hours a day. Cf. Buena Vista Palace v. Lopez, 557 So.2d 948, 950 (Fla. 1st DCA 1990). E/C admit that Publix allowed rest periods and arranged a flexible work schedule without a production quota. Competent substantial evidence in the record demonstrates Claimant's labeling work was unavoidably subject to interruptions arising from pain and discomfort. See Drummond v. Plumbing Corp. of America, 428 So.2d 741 (Fla. 1st DCA 1983). Prior to the injury, Claimant had worked in the bakery 8-12 hours daily, five days a week. The record lacks substantial evidence demonstrating Claimant is physically capable of engaging in gainful employment. Although the evidence indicated Claimant's work in the labeling department was beneficial to Employer, the record *686 "leads to the inescapable conclusion that [C]laimant's return to work was sheltered employment." Roberts v. WPBT, 395 So.2d 233, 234 (Fla. 1st DCA 1981); Kraft, Inc. v. Hood, 476 So.2d 302 (Fla. 1st DCA 1985). Sheltered employment is not a substitute for payment of benefits properly due under the provisions of chapter 440.
Claimant is a widow in her late 50's, with an eighth-grade education and limited ability to read and write. She had seasonal employment as a sectionizer at a citrus company from 1957 until 1971, when the company closed down. She commenced employment at Publix in 1977. Dr. Munro, a psychologist, evaluated Claimant in March 1991 and described her as a woman of "low average intelligence." Evidence of other marketable vocational skills is lacking. Claimant cannot return to her former level of employment at Publix, and no job other than in labeling was offered.
In Port Everglades Terminal Co. v. Canty, 120 So.2d 596, 600-01 (Fla. 1960), the court recognized that an employee need not be "absolutely helpless or physically broken and wrecked" to be classified as PTD. See Davis v. Bonded Transp., Inc., 573 So.2d 373, 374-75 (Fla. 1st DCA 1991) (total incapacitation not statutorily required to entitle claimant to PTD benefits); Richardson v. City of Tampa, 175 So.2d 43 (Fla. 1965). We find Claimant met the burden of establishing she is not able uninterruptedly to do even light work due to physical limitation. E/C failed to prove otherwise. Accordingly, the record mandates a finding that Claimant is PTD. Roberts. We reverse and remand for the JCC to award PTD benefits from April 24, 1990, and to make appropriate findings consistent with Surrency, 467 So.2d at 740.
REVERSED and REMANDED, with instructions.
SHIVERS, ZEHMER and KAHN, J., concur.