723 So.2d 912 (1999)
COMMERCIAL CARRIER CORP. and Comcar Industries, Inc., Appellants,
v.
Richard LaPOINTE, Appellee.
No. 97-2631.
District Court of Appeal of Florida, First District.
January 13, 1999.
*913 Kevin G. Malchow and Erin E. Kelling of Zimmerman, Shuffield, Kiser & Sutcliffe, P.A., Orlando, for Appellants.
Michael B. Murphy, Winter Haven, and Bill McCabe of Shepherd, McCabe & Cooley, Longwood, for Appellee.
*914 BENTON, J.
Richard LaPointe suffered accidents while at work for Comcar Carrier Industries, Inc. (Comcar) on December 1, 1985, October 21, 1989, and September 5, 1991. Comcar and Commercial Carrier Corporation (CCC) appeal an order awarding Mr. LaPointe payment for a medical evaluation he underwent, temporary wage-loss benefits, permanent wage-loss benefits, permanent total disability benefits, and future medical benefits. Also arguing that the judge of compensation claims erred in determining a point of maximum medical improvement, Comcar and CCC seek to overturn all these awards.[1] We affirm the award of payment for the medical evaluation, the award of permanent wage-loss benefits for the period from November 2, 1995, through April 11, 1996, and the award of permanent total disability benefits. But we reverse the award of temporary wage-loss benefits, the award of permanent wage-loss benefits for the period from April 12, 1996, to March 12, 1997, and the award of future medical benefits. We conclude that the error as to maximum medical improvement was harmless.

Psychiatric Evaluation
The industrial accidents injured Mr. LaPointe's back, arms, wrists, right shoulder, right ankle, and right knee. Questions arose about psychological problems, as well. On June 6, 1995, Mr. LaPointe requested a psychiatric evaluation. CCC and Comcar responded by offering an evaluation only if the physician they had authorized to treat Mr. LaPointe's physical maladies should conclude that he needed to be evaluated by a psychiatrist. CCC and Comcar did not unconditionally authorize a psychiatric evaluation until April 19, 1996. By that time, Mr. LaPointe had gone on his own to see a Dr. McClane, who performed a psychiatric evaluation in November of 1995.
Dr. McClane's $675 bill for the evaluation is at issue. A petition for benefits sought payment and the parties listed this bill as at issue in the pretrial stipulation. See Citrus World, Inc. v. Mullins, 704 So.2d 128 (Fla. 1st DCA 1997). CCC and Comcar argue that they should not have to pay for the psychiatric evaluation Dr. McClane performed because they offered a psychiatric evaluation by another psychiatrist. The rule is that
the employee is required to request the care sought. If the employer/carrier fails or neglects to provide the treatment, the employee may seek the treatment without first obtaining an order from the deputy commissioner. The employee does so at the peril of having the deputy commissioner later rule that such treatment was not reasonable and necessary. See Fuchs Baking Company v. [Estate of] Szlosek, 466 So.2d 415 (Fla. 1st DCA 1985).
Hill v. Beverly Enters., 489 So.2d 118, 120 (Fla. 1st DCA 1986). In the present case, CCC and Comcar "failed or neglected to provide" a psychiatric evaluation in a timely fashion. Nor did they seek a ruling from the judge of compensation claims as to the need for a psychiatric evaluation. CCC and Comcar do not question on appeal the finding that a psychiatric evaluation was reasonable and medically necessary. There is no basis for disturbing the award of payment for Dr. McClane's evaluation.

Temporary Wage-Loss Benefits
The judge of compensation claims awarded temporary wage-loss benefits and future medical benefits, even though no such benefits were listed as being at issue in the pretrial stipulation. Nor was any entitlement *915 to temporary benefits or future medical benefits tried by consent of the parties.[2]
As to each class of benefits, "[b]ecause the claimant did not specifically request this class of benefits, and the matter was not otherwise clearly placed at issue, we reverse the award." Florida Power Corp. v. Hamilton, 617 So.2d 333, 333 (Fla. 1st DCA 1993). See also Lakeside Baptist Church v. Jones, 714 So.2d 1188 (Fla. 1st DCA 1998).
An order that is not in accord with the understanding with which the workers' compensation hearing was undertaken and participated in is a denial of due process and must be reversed. Munroe Memorial Hospital v. Thompson, 388 So.2d 1338 (Fla. 1st DCA 1980). A JCC should not award benefits which are beyond the scope of the hearing. Kaplan Industries, Inc. v. Rowlett, 565 So.2d 404 (Fla. 1st DCA 1990).
Southeast Recycling v. Cottongim, 639 So.2d 155, 157 (Fla. 1st DCA 1994). "Due process concerns preclude a ruling on matters which have not been placed at issue, since the parties are entitled to notice so that they may fairly present their case." Cottongim, Id. (citing Hamilton, 617 So.2d at 334).

Permanent Wage-Loss Benefits
Sections 440.191 and 440.192, Florida Statutes (1995), contemplate that a judge of compensation claims will entertain a claim for benefits only after the claim has been set out first in a request for assistance and then in a petition for benefits. CCC and Comcar argue, therefore, that the judge of compensation claims had no jurisdiction to award wage-loss benefits because neither Mr. LaPointe's petition for benefits nor his antecedent request for assistance sought these benefits.
We have held that, where the parties agree, the judge of compensation claims may allow trial of new claims "sufficiently connected to" claims that, having been the subject of a request for assistance and a petition for benefits, are properly at issue. See Sabal Transp. v. Brooks, 666 So.2d 1032, 1033 (Fla. 1st DCA 1996). Comcar contends, however, that the subsequent adoption of Florida Rule of Workers' Compensation 4.028(5)(b) undermines Sabal. The rule provides:
A petition cannot be amended except by stipulation of the parties and approval of the judge. Such an amended petition shall not be subject to the informal dispute process or review by a docketing judge.
As we read the rule, it is consistent with our holding in Sabal. It is "the policy of law to encourage and uphold stipulations in order to minimize litigation and expedite the resolution of disputes. See Spitzer v. Bartlett Bros. Roofing, 437 So.2d 758, 760 (Fla. 1st DCA 1983)." Citrus World, Inc. v. Mullins, 704 So.2d 128, 128 (Fla. 1st DCA 1997). A pretrial stipulation that identifies for trial even a "connected" issue not previously raised operatesonce the pretrial stipulation is approved by the judge of compensation claimsas an amendment of the petition for benefits.
In the present case, the parties stipulated that the issue of wage-loss benefits for the period prior to entry of the pretrial stipulation, which was approved on April 11, 1996, would be tried. At the merits hearing, when counsel for CCC and Comcar reiterated the agreed temporal limitation, the judge of compensation claims addressed claimant's counsel, *916 "So what he's saying is your wage loss would cut as of the pre-trial stip." Claimant's counsel responded, "If that's what he wants, that's fine." Yet the judge of compensation claims awarded wage-loss benefits from November 2, 1995, through March 17, 1997. In awarding wage-loss benefits for any period after[3] April 11, 1996, the judge of compensation claims erred. We therefore reverse the award of wage-loss benefits for periods subsequent to April 11, 1996, but affirm the award of wage-loss benefits for the period November 2, 1995, through April 11, 1996, the date of the pretrial order.[4]

Permanent Total Disability Benefits
Sixty years old at the time of the final hearing, Mr. LaPointe had driven a truck for thirty-six years. Although he had an eighth grade education, tests indicated he was only marginally literate and was not a candidate for further education or for vocational training because he functioned at the low end of the intellectual range. His only significant work experience was as a truck driver.
Physicians restricted him permanently from sitting or driving for more than thirty minutes at a time, bending, lifting more than fifteen pounds, and from walking for more than a quarter of a mile at a stretch. Mr. LaPointe, who had to undergo surgery more than once on account of his industrial accidents, was assigned a permanent[5] impairment rating of 15.5%. Dr. Finley, a vocational evaluator, testified that Mr. LaPointe was not employable, taking his significant physical and vocational limitations into account. The judge of compensation claims found that Mr. LaPointe had in good faith performed "a valid and comprehensive job search" during which he had unsuccessfully contacted over two hundred employers.
After this extensive but unsuccessful job search, however, Comcar offered him a position as a night watchman in June of 1995. The position was never advertised and did not, indeed, exist prior to being offered to Mr. LaPointe. He accepted the job and was allowed to work less than the set hours, to arrive late, or to leave earlyin effect to regulate his own hours.
Although he was found sleeping on the job, he retained his employment. He was asked to make rounds, but was not required to if he felt he was unable to, nor was he required to keep a record of rounds made or missed. No one filled in when Mr. LaPointe was absent, even when he was absent for four months running.
The cases recognize three ways to prove entitlement to permanent total disability benefits on account of industrial accidents occurring before January 1, 1994:(1) evidence of permanent medical incapacity to perform even light work uninterruptedly; (2) evidence of permanent work-related physical restrictions coupled with an exhaustive but unsuccessful job search; or (3) evidence of permanent work-related physical restrictions that, while not alone totally disabling,[6] do *917 preclude performing light work uninterruptedly, when combined with vocational factors. See Herrera v. Hojo Inn Maingate, 680 So.2d 439, 440-41 (Fla. 1st DCA 1996); Wal-Mart Stores, Inc. v. Liggon, 668 So.2d 259 (Fla. 1st DCA 1996).
Whether a position constitutes "sheltered employment" requires a "factual determination." School Dist. of Escambia County v. Cooper, 686 So.2d 613, 614 (Fla. 1st DCA 1996). The judge of compensation claims found that "the facts about this night watchman job ... can lead to no other conclusion than that the night watchman position was sheltered." Competent substantial evidence supports this finding.
So-called sheltered employment is neither "conclusive proof of a substantial earning capacity," § 440.15(1)(b), Fla. Stat. (1991), nor "a substitute for payment of benefits properly due under the provisions of chapter 440." Shaw v. Publix Supermarkets, Inc., 609 So.2d 683, 686 (Fla. 1st DCA 1992). It is work unavailable in the "open labor market" that an employer who is responsible for compensation benefits pays an injured employee to perform. See Southern Bell Tel. & Tel. Co. v. Bell, 167 So.2d 844, 846 (Fla.1964); Port Everglades Terminal Co. v. Canty, 120 So.2d 596, 601 (Fla.1960) ("a specially-created job, one light of effort and responsibility but laden with rest and comfort (employment plums that do not often dangle from the tree of everyday economics)") (quoting Unora v. Glen Alden Coal Co., 377 Pa. 7, 104 A.2d 104, 107 (1954)); Sugar Cane Growers Co-op. v. McLean, 679 So.2d 856, 857 (Fla. 1st DCA 1996) ("Employment in a regular job may be considered sheltered, when, as here, the claimant is permitted to regulate his own hours to accommodate his disability."); U.S. Fidelity and Guaranty Assoc. v. Kemp, 658 So.2d 1212 (Fla. 1st DCA 1995) (finding a position sheltered employment where "fellow employees covered for the claimant because he needed to leave work and go home sick frequently, perhaps even on a daily basis").
That the work for which the injured employee is being paid is work the employer needs done does not rule out its being sheltered employment. See Shaw, 609 So.2d at 685-86. There we said:
E/C admit that Publix allowed rest periods and arranged a flexible work schedule without a production quota. Competent substantial evidence in the record demonstrates Claimant's labeling work was unavoidably subject to interruptions arising from pain and discomfort.... Although the evidence indicated Claimant's work in the labeling department was beneficial to Employer, the record "leads to the inescapable conclusion that [C]laimant's return to work was sheltered employment."
(Citation omitted.) We have also acknowledged that work as a security guard may constitute sheltered employment. See New Wales Chemicals, Inc. v. Parks, 518 So.2d 360, 363 (Fla. 1st DCA 1987) ("job must be characterized as sheltered employment because claimant's duties have been conformed to claimant's limitations to light duty work, and the job pays much more than any similar job as a guard in the community"). See generally Roberts v. WPBT, 395 So.2d 233, 234 (Fla. 1st DCA 1981).
Dr. Finley, the vocational evaluator, after listening to testimony about what Mr. LaPointe's job as a night watchman required, testified that the position was sheltered employment. The judge of compensation claims was entitled to credit this and the other testimony supporting his conclusion that the night watchman's job was sheltered employment.[7] To the extent the conclusion reached by the judge of compensation claims depends on findings supported by competent substantial *918 evidence in the record, we must affirm, even if there is evidence to the contrary. See, e.g., Cumberland Farms, Inc. v. Manning, 685 So.2d 64 (Fla. 1st DCA 1996).
Finally, CCC and Comcar contend that the night watchman's job was not sheltered employment as a matter of law because "pervasive federal law now requires employers to make reasonable accommodations for their disabled employees." Liggon, 668 So.2d at 271.
The American[s] with Disabilities Act ("ADA") is a federal anti-discrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to individuals without disabilities. 29 C.F.R. § 1630, App. (1996). The ADA expansively prohibits discrimination in employment against people with disabilities, providing that, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).
A "disability" includes a physical or mental impairment that substantially limits one or more of an individual's major life activities. 42 U.S.C. § 12102(2). "Discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity...." 42 U.S.C. § 12112(b)(5)(A).
Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 804-05 (5th Cir.1997) (footnote omitted), cert denied, ___ U.S. ____, 118 S.Ct. 1050, 140 L.Ed.2d 113 (1998). The present case parallels Rent A Center v. Industrial Commission of Arizona, 191 Ariz. 406, 956 P.2d 533 (Ariz.Ct.App.1998), where the court said:
Petitioners argue that the ALJ mislabeled RAC's job offer as sheltered employment, contending that the Americans with Disabilities Act (ADA), 42 U.S.C. SS 12101 through 12213, required RAC to make reasonable accommodation to employ Paul and that "[t]he ADA preempts all state workers' compensation law." ...
Although the enactment of the ADA ... may have some impact on the application of the sheltered employment doctrine, this could only happen if the Act[] appl[ies] to the specific facts of a case.... The ADA... [does] not apply if no accommodation will enable the employee to perform an essential function of a job. McCollough v. Atlanta Beverage Co., 929 F.Supp. 1489 (N.D.Ga.1996); Matos v. City of Phoenix, 176 Ariz. 125, 859 P.2d 748 (App. 1993).
Whether a function is essential is determined on a case-by-case basis, taking into consideration all relevant factors, including the employer's judgment, whether the position exists to provide for the performance of the function, and the number of employees available to perform the function. 29 C.F.R. § 1630.2(n).... We thus conclude that repossessing property, which entails moving furniture, appliances, and other property from the customer's home to the RAC store, is an essential function of the account representative's job.
... If Paul, with his lifting limitation, were to work at RAC as an account representative, his essential duties could not be completed without allocating an essential function to another employee.
Rent A Center, 956 P.2d at 535-36. Here the judge of compensation claims reasonably concluded that reporting for work (and staying awake while at work) was essential to the function of a night watchman. In Tyndall v. National Education Centers, Inc. of California, 31 F.3d 209, 213 (4th Cir.1994), the court said:
Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee "who does not come to work cannot perform any of his job functions, essential or otherwise." Wimbley v. Bolger, 642 F.Supp. 481, 485 (W.D.Tenn.1986), aff'd, 831 F.2d 298 (6th Cir.1987). Therefore, a regular and reliable level of attendance is a necessary element of most jobs. See, e.g., Carr v. Reno, 23 F.3d 525, 529 (D.C.Cir.1994)(holding that "coming to *919 work regularly" is an "essential function"); Law v. United States Postal Serv., 852 F.2d 1278, 1279-80 (Fed.Cir.1988)(holding that attendance is a minimum function of any job); Walders v. Garrett, 765 F.Supp. 303, 309 (E.D.Va.1991) (holding that "reasonably regular and predictable attendance is necessary for many [jobs]"), aff'd, 956 F.2d 1163 (4th Cir.1992); Santiago v. Temple Univ., 739 F.Supp. 974, 979 (E.D.Pa.1990)("attendance is necessarily the fundamental prerequisite to job qualification"), aff'd, 928 F.2d 396 (3d Cir.1991). An employee who cannot meet the attendance requirements of the job at issue cannot be considered a "qualified" individual protected by the ADA. See Carr, 23 F.3d at 529-30; Walders, 765 F.Supp. at 314; Santiago, 739 F.Supp. at 979.
While we do not doubt that the Americans With Disabilities Act broadens the spectrum of jobs available to applicants disabled by workplace injuries, that abstract proposition has no bearing on the present case. See Rent A Center, 956 P.2d at 536. Here competent substantial evidence supports the award of permanent total disability benefits.
Affirmed in part and reversed in part.
BOOTH and PADOVANO, JJ., concur.
NOTES
[1] In addition, CCC contends that it is not obligated for an attorney's fee based on permanent total disability benefits because those benefits were awarded only from the date of the final hearing forward. See Daytona Beach Geriatric Ctr. v. Linehan., 673 So.2d 548 (Fla. 1st DCA 1996). The compensation order required CCC to "pay claimant's attorney a reasonable fee for which jurisdiction is reserved should the parties fail to reach an agreement as to the amount."

Because the amount of the fee was never established, the propriety of the fee award is not an issue presently before us. See Wometco Enters. v. Cordoves, 650 So.2d 1117 (Fla. 1st DCA 1995); Winkelman v. Toll, 632 So.2d 130 (Fla. 4th DCA 1994); Hunt v. Hunt, 648 So.2d 764 (Fla. 2d DCA 1994). But reservation of jurisdiction to decide questions concerning attorney's fees does not render the order in the main case nonfinal. See North River Ins. Co. v. Wuelling, 674 So.2d 881 (Fla. 1st DCA 1996).
[2] This was more than just a technical error. See Village Inn Restaurant v. Aridi, 543 So.2d 778 (Fla. 1st DCA 1989).

We reject the claimant's contention that because the E/C did not object to future medical benefits the issue is waived on appeal. Since the claimant never properly raised the issue below, he cannot now maintain that failure to object constitutes waiver; there was nothing before the E/C to which an objection could be made. We also reject the contention that the DC's determining an issue not properly placed into controversy is readily correctable, technical error that the E/C failed to attempt to have the DC rectify within the time available for correction. Such error must be the kind that could commonly be considered inconsequential. Department of Labor & Employment Security v. American Building Maintenance, 449 So.2d 932 (Fla. 1st DCA 1984). We cannot say that awarding future medical benefits where none were properly claimed and noticed is of no consequence.
Id. at 779. Compare Aircraft Servs. v. Reyes, 582 So.2d 66 (Fla. 1st DCA 1991); Albertson's Inc. v. Natale, 555 So.2d 946 (Fla. 1st DCA 1990); Acosta Roofing Co. v. Gillyard, 402 So.2d 1321 (Fla. 1st DCA 1981).
[3] It appears from the record that Comcar may have voluntarily paid wage-loss benefits up until the date of the pretrial hearing. The claimant stated in his answer brief that the employer had voluntarily paid wage-loss benefits until February 3, 1997. If so, wage-loss benefits for this period were not at issue and should not have been awarded. But the employer has not argued on appeal that an award of wage-loss benefits up to April 11, 1996, was erroneous.
[4] Because we are reversing the award of wage-loss benefits for the period subsequent to April 11, 1996, we do not reach the question of whether deemed earnings should have been calculated for the four months claimant did not work as a night watchman.
[5] The judge of compensation claims found that Mr. LaPointe had attained psychiatric maximum medical improvement as of November 2, 1995. CCC and Comcar challenged the date of physical maximum medical improvement, contending that the judge of compensation claims erred in determining that maximum physical improvement occurred on September 19, 1994, rather than August 27, 1993. We need not decide this question. Any error on this score was harmless in light of the uncontested finding that overall maximum medical improvement occurred by virtue of his psychiatric condition on November 2, 1995.
[6] Comcar argued on appeal that there was no medical evidence to support a finding of permanent total disability, apparently confused about the ability to prove permanent total disability by a combination of vocational evidence and medical restrictions which did not alone bar light work uninterruptedly. At oral argument Comcar acknowledged that permanent total disability may be proven even if the claimant is medically capable of performing light work uninterruptedly.
[7] The judge of compensation claims did not err in considering Dr. Finley's vocational opinion on sheltered employment, although the opinion was not necessary for the finding of sheltered employment. The facts on which Dr. Finley relied were of record independently of his testimony. Vocational expert testimony need not rely exclusively on first hand knowledge. See Heavy Constructors, Inc. v. Dericho, 259 So.2d 489 (Fla.1972); Dental Arts Lab, Inc. v. Constantino, 531 So.2d 999 (Fla. 1st DCA 1988); Butler's Dairy v. Honeycutt, 452 So.2d 120 (Fla. 1st DCA 1984); Drummond v. Plumbing Corp. of Am., 428 So.2d 741 (Fla. 1st DCA 1983); contra Florida Div. of Corrections v. Morgan, 382 So.2d 1288 (Fla. 1st DCA 1980).