734 So.2d 1072 (1999)
Dorothy COOPER, Appellant,
v.
ESCAMBIA COUNTY SCHOOL BOARD, Appellee.
No. 97-1871.
District Court of Appeal of Florida, First District.
February 17, 1999.
Rehearing Denied July 8, 1999.
Louis K. Rosenbloum; Mark J. Proctor of Levin, Middlebrooks, Thomas, Mitchell, Green, Proctor, Echsner & Papantonio, P.A., Pensacola, for Appellant.
Joseph L. Hammons of Hammons & Whittaker, P.A., Pensacola, for Appellee.
VAN NORTWICK, J.
In this worker's compensation case, Dorothy Cooper appeals the final order of the Judge of Compensation Claims (JCC) which denied her claim for permanent total disability (PTD) benefits following a 1990 injury sustained in the course of her employment as a bus driver for the School District of Escambia County, appellee.[1] Because competent, substantial evidence supports the JCC's finding that the clerical work provided by the employer did not constitute "sheltered employment," we affirm.
In Wal-Mart Stores, Inc. v. Liggon, 668 So.2d 259, 271 (Fla. 1st DCA 1996), this court explained:
The sheltered employment doctrine does not have a life of its own. Rather, it merely serves to vindicate the legislatively imposed parameters of permanent and total disability. If an employer creates a job for an employee merely as a litigation tactic in a worker's compensation case, such a job cannot be said to constitute "gainful employment" as that term is used in section 440.15(1)(b), Florida Statutes. Reasonable job modifications for the purpose of accommodating an injured or partially disabled employee *1073 will not, however, place the job outside of the definition of gainful employment. (Citations omitted).
Thus, although a regular job may be considered sheltered employment "where ... the claimant is permitted to regulate his own hours to accommodate his disability," Sugar Cane Growers Coop. v. McLean, 679 So.2d 856, 857 (Fla. 1st DCA 1996), the finding of sheltered employment does not stand or fall on a showing that the claimant may regulate his or her working hours.
In the instant case, the record shows that claimant's treating physician recommended that she work part time to facilitate her recovery and increase her strength. Further, although the claimant's clerical job was part of the employer's "return-to-work" program instituted for injured workers, claimant was not the only participant in the program and she performed work which had been previously performed by other employees of the school system. Competent and substantial record evidence supports the conclusions that claimant's job duties were not created exclusively for her; the job was of independent value to the school system and was not created as a litigation tactic; and in this position, claimant was able to work six and one-half hours per day, which the record reflects is the equivalent of the full-time hours for a bus driver employed by the school system. The modifications the employer made in the claimant's job to accommodate her disability do not, as a matter of law, render it sheltered employment so as to place this job outside of "gainful employment" under section 440.15(1)(b), Florida Statutes (1989). Liggon, 668 So.2d at 271.
Further, we do not read Shaw v. Publix Supermarkets, Inc., 609 So.2d 683 (Fla. 1st DCA 1992), to require reversal here. In Shaw, the judge of compensation claims denied permanent total disability benefits in part based on the claimant's ability to perform a light duty job in which the employer arranged a flexible work schedule, allowed frequent rest periods, and established no production quotas. Id. at 684,685. We reversed the order denying permanent total disability benefits "because the record lacks substantial evidence to support the denial of PTD benefits...." Id. at 684. The reversal was based in substantial part upon the panel's conclusion that "the record leads to the inescapable conclusion" that the claimant's light duty job was sheltered employment. Id. at 685-686.
As explained in Liggon, "[t]he determination that a particular job is sheltered employment is ... a largely factual issue." Liggon, 668 So.2d at 271. Although, in the instant case, there was conflicting evidence presented relating to the sheltered employment issue, unlike the panel in Shaw, here we find competent, substantial evidence to support the JCC's findings.
AFFIRMED.
PADOVANO, J., CONCURS.
BENTON, J., DISSENTS WITH WRITTEN OPINION.
BENTON J., dissenting.
We reversed and remanded, on appeal from the original order,[2] with directions that the judge of compensation claims determine whether Mrs. Cooper's clerical work should be deemed "sheltered employment." School Dist. of Escambia County v. Cooper, 686 So.2d 613, 614 (Fla. 1st DCA 1996). Sheltered employment is
work unavailable in the "open labor market" that an employer who is responsible for compensation benefits pays an injured employee to perform. See Southern Bell Tel. & Tel. Co. v. Bell, 167 So.2d 844, 846 (Fla.1964); Port Everglades Terminal Co. v. Canty, 120 So.2d 596, *1074 601 (Fla.1960) ("a specially-created job, one light of effort and responsibility but laden with rest and comfort (employment plums that do not often dangle from the tree of everyday economics)") (quoting Unora v. Glen Alden Coal Co., 377 Pa. 7, 104 A.2d 104, 107 (1954)); Sugar Cane Growers Co-op. v. McLean, 679 So.2d 856, 857 (Fla. 1st DCA 1996) ("Employment in a regular job may be considered sheltered, when, as here, the claimant is permitted to regulate his own hours to accommodate his disability."); U.S. Fidelity and Guaranty Assoc. v. Kemp, 658 So.2d 1212 (Fla. 1st DCA 1995) (finding a position sheltered employment where "fellow employees covered for the claimant because he needed to leave work and go home sick frequently, perhaps even on a daily basis").
Commercial Carrier Corp. v. LaPointe, 24 Fla. L. Weekly D192, D194, 723 So.2d 912, 917 (Fla. 1st DCA 1999). On remand the judge of compensation claims took no further evidence before entering the order now under review, which states:
It is fairly obvious in this case ... that if the injured employee attempted to secure employment in the open labor market, no one would hire her. The claimant's vocational expert, Leslie Gillespie, indicated she was functioning at below the sedentary level and academic test scores indicated she could not transfer to any type of competitive employment. Her clerical tests were "... very, very poor and with the difficulty she had following instructions, her ability to grasp is going to be extremely limited." (Record at p. 251) Ms. Gillespie concludes her written report indicating the claimant is not a realistic candidate for competitive, gainful employment.
This finding has clear record support[3] and should require reversal and remand here, with directions to reinstate the original award. I therefore respectfully dissent from today's affirmance.
The majority opinion correctly states that a "finding of sheltered employment does not stand or fall on a showing that the claimant may regulate his or her working hours." Ante p. 1073. But this was precisely the basis for the ruling under review. The judge of compensation claims wrote:
It appears that under the holding in [Sugar Cane Growers Co-op. v. McLean, 679 So.2d 856, 857 (Fla. 1st DCA 1996)] that, unless the employee is allowed to regulate his or her own hours to accommodate the disability, even modified sedentary jobs cannot be considered sheltered employment.... [D]espite all the compelling factors listed in my original order supporting a PTD award in this case, the employee's claim for PTD must be denied. It appears that the employment offered by the school board as measured by the MCLEAN standard is not sheltered employment.
The order under review is wrong as a matter of law.[4] The majority opinion concedes *1075 that McLean does not require the result here. The majority opinion's purported deference to fact findings does not include appropriate deference to the finding that "if the injured employee attempted to secure employment in the open labor market, no one would hire her."
NOTES
[1] The instant order was entered on remand from an earlier appeal to this court. See School District of Escambia County v. Cooper, 686 So.2d 613 (Fla. 1st DCA 1996).
[2] In originally ordering permanent total disability benefits, the judge of compensation claims "acknowledged that Cooper has been working in a part-time sedentary clerical position for the employer." School Dist. of Escambia County v. Cooper, 686 So.2d 613, 614 (Fla. 1st DCA 1996).
[3] Testimony from the School Board's own witnesses established that the position Mrs. Cooper was given was not a position the School Board offered to anybody who had not been injured working for the School Board in another positiona position like hers was only offered to individuals who had made workers' compensation claims against the School Board. In the sixty-nine schools in the Escambia County School District only two other people filled similar positions, both of whom were also injured claimants.
[4] Because the positions the School Board created specially for and filled only with workers' compensation claimants were not available on the open market, it is immaterial whether competent substantial evidence in the record supports the finding that Mrs. Cooper was unable to regulate her work hours.

In point of fact, however, this finding lacks record support. The employer acknowledged that Mrs. Cooper did not work a regular schedule, and testified that Mrs. Cooper was never disciplined for missing work. The record contains pay stubs submitted with requests for wage-loss for periods after June 17, 1993(MMI), up until the time of the initial hearing which show that the number of hours Mrs. Cooper worked each week varied greatly. Starting with the two-week pay period ending August 22, 1993, she worked 12, 62.25, 30.25, 24, 9, 24.5, 30, 36.5, 43.75, 23.25, 22.50, 15, 22.25, 29, and 35.25 hours during successive two-week pay periods. The only argument appellee makes in support of the contention that Mrs. Cooper had no control over the hours she worked was "[i]ndeed, the claimant's vocational consultant noted that the claimant had only taken one day off of work." This argument misstates the record: the vocational consultant testified that for the purpose of having the vocational consultation done, which consultation occurred over more than one session, Mrs. Cooper did not want to take off more than one day per week. This same vocational consultant also stated that
She told me that she has at times had to take off work and has not been able to work five days a week and she has been allowed to do this as well.
Mrs. Cooper testified that she was able to work from 2.5 to 4 hours per day, depending on the pain. She testified she was unable to work at all on some days, needing to stay at home. This testimony was unrefuted. She clearly had control over how many hours she worked, the same flexibility that McLean had. Mrs. Cooper was allowed to work as little or as much as her condition permitted.
In Shaw v. Publix Supermarkets, Inc., 609 So.2d 683, 685-86 (Fla. 1st DCA 1992), we held:
E/C admit that Publix allowed rest periods and arranged a flexible work schedule without a production quota. Competent substantial evidence in the record demonstrates Claimant's labeling work was unavoidably subject to interruptions arising from pain and discomfort.... Although the evidence indicated Claimant's work in the labeling department was beneficial to Employer, the record "leads to the inescapable conclusion that [C]laimant's return to work was sheltered employment."