738 So.2d 491 (1999)
CITY OF HOLLYWOOD and Interrisk Concepts, Appellants/Cross-Appellees,
v.
Albert LOMBARDI, Appellee/Cross-Appellant.
No. 98-3186.
District Court of Appeal of Florida, First District.
August 5, 1999.
*492 Scott J. Brook of Peters, Robertson, Parsons, Welcher, Mowers & Passaro, Fort Lauderdale, for Appellants/Cross-Appellees.
Richard A. Sicking, Coral Gables, for Appellee/Cross-Appellant.
ERVIN, J.
We are asked to address six issues in this workers' compensation case. The City of Hollywood and Interrisk Concepts, the employer and its servicing agent (E/ SA), assert that the judge of compensation claims (JCC) abused her discretion as follows: (1) in awarding penalties and interest on benefits totaling $8,478.75 that were paid on May 12, 1995; (2) in compelling the E/SA to take its 25 percent reduction for the subrogation lien before the application of the 100 percent average weekly wage (AWW) cap authorized by section 440.20(15), Florida Statutes (1993), and Escambia *493 County Sheriffs Dep't v. Grice, 692 So.2d 896 (Fla.1997); (3) by failing to award the E/SA a credit for overpayment arising from the 100 percent AWW cap and resultant offsets; and (4) by awarding costs and attorney's fees to claimant. In his cross-appeal, claimant Albert Lombardi contends that the JCC erred as a matter of law (1) in capping the amount recoverable under the subrogation lien at $62,671, which was the total amount of claimant's recovery; and (2) in allowing the E/SA to apply the AWW cap so as to reduce workers' compensation payments rather than disability retirement pension benefits. For the reasons set forth below, we affirm the first three issues urged by the E/SA, decline to reach its fourth issue and, reverse those raised by claimant.
The facts in this case are not in dispute. Lombardi, who is currently 73 years of age, began working for the City as a building inspector in 1986. On September 14, 1993, he suffered a compensable shoulder injury when he slipped and fell while walking on a ramp at a home he was inspecting. Treatment complications occurred and Lombardi was determined to be permanently and totally disabled as of December 19, 1994.
Lombardi's AWW was $783.65, yielding a compensation rate of $425. Instead of compensation benefits, Lombardi began receiving benefits in January 1995 from the City's disability retirement pension plan in the amount of $2,623.37 per month.[1] Lombardi contributed $113 from his salary on a bimonthly basis to the pension plan. On May 12 and 15, 1995, claimant received checks from the E/SA as payment for permanent, total disability (PTD) benefits and supplemental benefits relating back to December 19, 1994. Payment of PTD benefits continued, based on the $425 compensation rate, until September 17, 1995, when the E/SA began reducing the amount by 25 percent due to its subrogation lien, which is discussed below. No supplemental benefits were paid after May 15, 1995.
Although Lombardi obtained indemnity and medical benefits from the E/SA, he also elected to file a negligence complaint in circuit court, as authorized by section 440.39(1), Florida Statutes (1993), against the homeowners of the property where he was injured. Under section 440.39(2), the E/SA then became subrogated to Lombardi's rights against the homeowners to the extent of the amount of compensation benefits paid and to be paid. The appropriate notice was filed by the E/SA under section 440.39(3), establishing a lien on Lombardi's claim. He and the homeowners eventually reached an out-of-court settlement for $100,000, which was the limit of their insurance policy coverage.
Thereafter, the E/SA moved for equitable distribution of the settlement funds in circuit court, seeking payment of its lien. At the time of the May 5, 1995, motion hearing, the E/SA had paid $41,228.76 in compensation benefits to claimant. Expert testimony was taken, and the circuit court found that claimant's total damages, after reduction of the amount for which Lombardi was comparatively negligent, were $250,000. Following the deduction of attorney's fees and costs incurred in the action ($37,329) from the $100,000 sum, Lombardi's net recovery was $62,671. The circuit court judge determined, after considering section 440.39(3), that the $62,671 Lombardi received was 25 percent of his total damages; therefore, the E/SA was entitled to the same percentage of reimbursement. In an order dated October 30, 1995, the court directed Lombardi to pay the E/SA $10,307.19, which is 25 percent of the $41,228.76 already paid to him, and it authorized the E/SA a reduction of future indemnity and medical payments by 25 percent in further payment of the lien.
After it had begun its reduction, the E/SA notified claimant by letter dated October *494 24, 1997, of its intention to assert an offset under section 440.20(15), Florida Statutes (1993), and Escambia County Sheriffs Dep't v. Grice, 692 So.2d 896 (Fla. 1997), based on benefits paid exceeding 100 percent of Lombardi's AWW, and sought reimbursement for overpayments.
Claimant raised the following claims at the workers' compensation hearing of December 2, 1997:(1) penalties and interest in connection with the compensation checks issued in May 1995, as they represented PTD and supplemental benefits dating back to December 19, 1994; (2) supplemental benefits from May 15, 1995, the date when the E/SA stopped paying them; and (3) the full amount of PTD benefits from September 17, 1995, or, alternatively, September 8, 1996, based upon his contention that the subrogation lien was paid in full as of those dates.
The JCC's order directed the E/SA to pay penalties and interest on the May 1995 payments and supplemental benefits from May 15, 1995, without any offset for disability pension or social security retirement, together with interest. It also allowed the E/SA to continue its 25 percent lien reduction until $62,671 in benefits were fully recovered, and, finally, it specified that future benefits were to be paid with an offset for the combination of workers' compensation and disability pension benefits in accordance with Grice, but the offset was not to be taken until after the 25 percent lien reduction was first calculated.
Turning to the issues raised by the E/SA on appeal, we affirm the first, regarding the award of penalties and interest on the May 1995 payments. Sections 440.20(7) and (9), Florida Statutes (1993), provide for the award of penalties and interest on any installment of compensation not paid within 14 days from the date when it is due. Because the payments made by the E/SA on May 12, 1995, related to benefits due as of December 19, 1994, it cannot be said that the JCC abused her discretion in awarding penalties and interest on the late payments. In so saying, we reject the E/SA's argument that it, in effect, overpaid Lombardi during this particular period based on its 25 percent lien reduction. The order granting the lien reduction was not entered until October 30, 1995; therefore, no overpayment of benefits existed in May 1995.
The E/SA's second issue concerns the order in which the 25 percent lien reduction and the 100 percent AWW cap and resultant offset are applied. The JCC found that the lien recovery should be calculated first, and then the workers' compensation/disability pension offset should be applied. We find no abuse of discretion in this ruling and therefore affirm.
Case law which has fleshed out the 100 percent AWW cap and resultant offset illustrates that the emphasis is on preventing the employer from being forced to provide the claimant with total benefits from workers' compensation and other collateral sources in excess of 100 percent of the claimant's AWW. See Grice; Barragan v. City of Miami, 545 So.2d 252 (Fla.1989); Domutz v. Southern Bell Tel. & Tel. Co., 339 So.2d 636 (Fla.1976); Brown v. S.S. Kresge Co., 305 So.2d 191 (Fla.1974). Because the total sum to be paid by the employer in benefits could not be determined until after the 25 percent lien reduction was applied, it was not unreasonable for the JCC to determine that the lien reduction should be allowed before the AWW cap and resultant offset. Nevertheless, because this is an issue of first impression, we certify the following question to the Florida Supreme Court as one of great public importance:
WHEN AN EMPLOYER/CARRIER IS ENTITLED TO REDUCE A CLAIMANT'S COMPENSATION BENEFITS AS A RESULT OF A SUBROGATION LIEN UNDER SECTION 440.39, FLORIDA STATUTES, SHOULD THE EMPLOYER/CARRIER APPLY THE LIEN REDUCTION *495 BEFORE OR AFTER CALCULATING TOTAL BENEFITS AND APPLYING THE 100 PERCENT AVERAGE WEEKLY WAGE CAP AND RESULTANT OFFSET AUTHORIZED BY SECTION 440.20(15), FLORIDA STATUTES, AND ESCAMBIA COUNTY SHERIFF'S DEP'T v. GRICE, 692 So.2d 896 (Fla. 1997)?
Under the third issue, the E/SA complains that the JCC abused her discretion by failing to allow it a credit for overpayments by virtue of the AWW cap and resultant offset for periods after December 19, 1994. The JCC ruled that future benefits were to be paid pursuant to the dictates of Grice, and that any previous offsets that could have been taken were administratively waived. We find no abuse of discretion in this ruling.
In affirming this point, we are aware of the provisions of section 440.15(13), Florida Statutes (Supp.1994), making an employee liable for any overpayments of indemnity benefits and allowing the employer/carrier to recover the overpayments by reducing compensation payments by 20 percent. See also Brown v. L.P. Sanitation, 689 So.2d 332 (Fla. 1st DCA 1997), wherein an employer/carrier was permitted to reduce compensation benefits to recover an overpayment caused by the employer/carrier's failure to apply the social security disability offset back to January 1, 1994, the effective date of section 440.15(13).
Nevertheless, we note that the E/SA is specifically claiming the overpayments based on Grice, an argument suggesting that Grice interpreted section 440.20(15) in a manner contrary to existing law. Because the effect of this new application is to reduce claimant's benefits, we decline to apply it retroactively to December 19, 1994. Compare City of Miami v. Bell, 634 So.2d 163 (Fla.1994) (refusing to apply ruling in Barragan v. City of Miami, 545 So.2d 252 (Fla.1989), retroactively to require City of Miami to repay offsets that were improperly taken from the claimants' pensions).
We decline to consider the E/SA's fourth issue regarding entitlement to attorney's fees and costs, because the issue is not ripe for appeal based on the JCC's reservation of jurisdiction to determine amount. See North River Ins. Co. v. Wuelling, 674 So.2d 881 (Fla. 1st DCA 1996) (on motion to dismiss); Commercial Carrier Corp. v. LaPointe, 723 So.2d 912, 914 n. 1 (Fla. 1st DCA 1999).
Turning next to the issues raised on cross-appeal, Lombardi first argues that the JCC erred in interpreting section 440.39, Florida Statutes (1993), by allowing the E/SA to recover the entire amount of his $62,671 net recovery for its subrogation lien. Claimant explains that because he received only 25 percent of his total damages ($250,000) in the settlement, the E/SA's lien should be restricted or capped at 25 percent of the net recovery ($62,671), or $15,667.75. Thus, Lombardi argues that the E/SA should receive a percentage of the percentage of the total damages. The E/SA maintains, however, that section 440.39 allows no such percentage restriction or cap. Rather, it should receive the same percentage of total damages as claimant received.
In support of their contrary positions, the parties rely on the same language in section 440.39(3)(a), which states as follows:
[I]f the employee ... can demonstrate to the court that he did not recover the full value of damages sustained, the employer or carrier shall recover from the judgment or settlement, after costs and attorney's fees incurred by the employee... in that suit have been deducted, a percentage of what it has paid and future benefits to be paid equal to the percentage that the employee's net recovery is of the full value of the employee's damages.

(Emphasis added.)
We agree with claimant that the above emphasized language provides that the *496 E/SA, under circumstances such as those at bar, should receive a percentage of the percentage recovered. In reaching this conclusion, we have considered Nikula v. Michigan Mutual Insurance, 531 So.2d 330 (Fla.1988), and Manfredo v. Employer's Casualty Insurance Co., 560 So.2d 1162 (Fla.1990). Admittedly, both of these cases dealt with earlier versions of section 440.39(3), but our review of the statute's history implies that the version in effect in 1993, when claimant's accident occurred, was a result of the discussion in Nikula. The 1981 statute at issue in Nikula merely provided that the employer/carrier would receive 100 percent of what it had paid unless the employee demonstrated that he or she did not recover the full value of damages sustained. See Nikula, 531 So.2d at 331 (quoting § 440.39(3), Fla. Stat. (1981)). The facts involved full damages of $15,000,000, a finding of 90 percent comparative negligence by the claimant, and a settlement of $3,600,000. The district court of appeal had determined that the employer/carrier's lien should have been 24 percent of the benefits, because the claimant recovered only 24 percent of the full damages and this finding was affirmed. The same formula was employed in Manfredo, which involved the 1983 statute. The underlined language in the 1993 statute was added in 1989, just one year after Nikula established the ratio formula. See Ch. 89-289, § 20, at 1771, Laws of Fla. Thus, it appears that the statutory language at issue was a codification of the formula set out in Nikula and repeated in Manfredo.
The circuit court properly applied the percentage formula in determining the E/SA's lien in this case. The court decided that claimant received 25 percent of his full damages; therefore, the E/SA's lien should be 25 percent. The JCC erred, however, in not capping the lien at 25 percent of the $62,671 net recovery, or $15,667.15. Although neither Nikula nor Manfredo address this precise issue, Nikula states that the "lienholder should be reimbursed in the same ratio as the injured worker" and that the "lien shall be based upon the ratio of settlement amount to full value of damages." Id. at 332, 330. This language, when considered in pari materia with section 440.39(3), supports the claimant's interpretation of the statute as capping or limiting the lien to a percentage of the percentage recovered.
Were we to conclude otherwise and adopt the E/SA's interpretation of the statute, the E/SA would be entitled to recover all that Lombardi received in the civil action, which would necessarily include damages for pain and suffering and loss of consortium. Those are damages claimant obtained in his action over and above economic and medical damages to which the E/SA is entitled. We cannot believe the legislature intended such a result in enacting section 440.39(3)(a). The order is therefore reversed to the extent it allows the E/SA to recover the full amount of claimant's net recovery of $62,671. Rather, the lien is limited to 25 percent of the net recovery, or $15,667.75, and the E/SA should be directed on remand to repay any amounts deducted as a result of its lien in excess of $15,667.75, taking the initial $10,307.19 payment into account.[2] Nevertheless, because this too is an issue of first impression, we certify the following question to the Florida Supreme Court as one of great public importance:
WHEN THE EMPLOYER/CARRIER IS ENTITLED TO A SUBROGATION LIEN UNDER SECTION 440.39, FLORIDA STATUTES (1993), AND THE CLAIMANT'S NET RECOVERY IN A SETTLEMENT WITH THE THIRD-PARTY TORTFEASOR IS *497 LESS THAN 100 PERCENT OF THE CLAIMANT'S TOTAL DAMAGES, SHOULD THE EMPLOYER/CARRER'S LIEN BE LIMITED TO A PERCENTAGE OF THE PERCENTAGE OF THE NET RECOVERY?
In his final point on cross-appeal, claimant argues that the JCC erred as a matter of law in allowing the E/SA to offset his workers' compensation payments, rather than applying the offset to his disability retirement pension benefits. Lombardi's argument is based on Barragan v. City of Miami, 545 So.2d 252 (Fla. 1989), involving an employment contract that allowed the City of Miami to reduce disability pension benefits by the amount of workers' compensation paid. Thus, the City was required to pay the full amount of workers' compensation and could reduce pension benefits only to the extent the combination of all benefits exceeded the claimant's AWW. Claimant refers to that type of situation as a "Barragan offset," and he argues that Barragan offsets apply when the collateral benefits involved include ones to which the employee contributed, as here.
In contrasting the result in Barragan with Grice, which involved PTD, state disability retirement, and social security disability benefits, we note that none of the benefits in Grice were produced from a fund maintained by the employer for payment of workers' compensation benefits.[3] In Grice, the employer was permitted to reduce the amount of workers' compensation benefits by the amount that the total of all the benefits paid exceeded claimant's AWW. Claimant refers to this situation as a "Grice offset."
We are not convinced that the Florida Supreme Court intended to create two different types of offsets, allowing employer/carriers to reduce different benefits based on the contributors to the particular funds. In Barragan, the pension reduction was a matter of contract between the employer and employee. In Grice, the only funds within the employer's control that could be reduced were workers' compensation benefits, since the state of Florida paid the disability retirement and the federal government paid the social security disability. Moreover, the employer in Grice was entitled to a social security disability offset under section 440.15(9), Florida Statutes (1985), which specifically allows a reduction of workers' compensation payments by the amount of social security disability paid.
In the instant case, Lombardi does not receive social security disability benefits; therefore, the E/SA is not entitled to the offset authorized in section 440.15(10), Florida Statutes (1993). He does receive social security retirement, but this court has previously held that such benefits are not subject to an offset. See Dixon v. Pasadena Yacht & Country Club, 731 So.2d 141 (Fla. 1st DCA 1999). Unlike Barragan, there is no evidence at bar of a contractual term allowing the reduction of claimant's disability pension by the amount of workers' compensation paid. Thus, it appears that, as in Grice, workers' compensation benefits are the only funds which may be reduced by the E/SA once total benefits exceed AWW.
Nevertheless, we are cognizant of section 440.21(1), Florida Statutes (1993), which prohibits "[a]ny agreement by an employee ... to contribute to a benefit fund or department maintained by such employer for the purpose of providing compensation or medical services and supplies as required by this chapter." Thus, if workers' compensation benefits are reduced based on disability pension benefits claimant received, and to which claimant contributed, such reduction in compensation may be violative of section 440.21. *498 Under the circumstances, we reverse and remand with instructions to determine whether claimant's disability pension has a provision comparable to that in Barragan. If such a provision exists, we direct the E/SA to pay full workers' compensation benefits and to apply any offset arising from the AWW cap, as provided in section 440.20(15) and Grice, to Lombardi's disability retirement pension benefits. If, on the other hand, no such provision exists, then we direct the JCC to consider section 440.21(1) and claimant's pro rata contributions to the disability retirement plan in determining any offset to workers' compensation benefits.
AFFIRMED in part, REVERSED in part, and REMANDED for further consistent proceedings.
WEBSTER, J., CONCURS.
BENTON, J., CONCURS IN PART AND DISSENTS IN PART WITH OPINION.
BENTON, J., concurring in part and dissenting in part.
I concur in the judgment insofar as it affirms the penalties and interest the judge of compensation claims awarded because the payment made on May 12, 1995, before any offset was authorized, came too late.
The judge of compensation claims erred, in my view, in looking first to pension benefits, instead of to workers' compensation benefits, in choosing which to reduce. On this basis, I join the majority in rejecting the appellants' contention that the judge of compensation claims should have treated certain workers' compensation payments as overpayments for failure to offset pension benefits. Since the pension plan is funded at least in part with employees' contributions, decreasing workers' compensation benefits on account of pension benefits runs afoul of section 440.21, Florida Statutes (1993). Under Barragan v. City of Miami, 545 So.2d 252, 254-55 (Fla.1989), workers' compensation benefits are primary.
I would, however, affirm the decision below insofar as the judge of compensation claims deferred to the circuit court's decision of the amount of the third party lien. In pertinent part, the merits order provides:
23. The claimant established that he did not recover the full value of damages sustained. Pursuant to Judge Patti E. Henning's Order of October 30, 1995, the claimant's net recovery in the third party action was 25% (or $62,671) of $250,000 which was determined to be the full value of his damages. Hence Judge Henning found that the employer/carrier was entitled to a 25% recovery ratio on all past and future compensation and medical benefits. The claimant was ordered to pay $10,307.19 to the employer/carrier on the total paid in compensation benefits through December 14, 1994 which amounted to $41,228.76.
24. Section 440.39, Fla. Stat. (1993), states that if the employee did not recover the full value of damages sustained, the "employer and carrier shall recover ... a percentage ... equal to the percentage that the employee's net recovery is of the full value of the employee's damages." The net recovery to the claimant was 25% of $250,000, or $62,671. Sec. 440.39, Fla. Stat. (1993), entitles the employer/carrier to a percentage equal to the percentage that the employee's net recovery is of the full value of the employee's damages. Thus, the employer/carrier is entitled to 25% of whatever benefits it pays with a ceiling of $62,671. The employer/carrier had previously been paid $10,307.19, which satisfied its lien as of December 14, 1994. The employer/carrier is entitled to continued recovery until such time as 25% of the total benefits it has paid since December 14, 1994, is satisfied (with a cap of $62,671). I find no authority for the claimant's proposition that the "retained lien" of the employer/ *499 carrier was 25% of $62,671 (or 25% of the 25% of the full value of damages).
I dissent from the majority's adoption of the "percentage of a percentage" approach which the judge of compensation claims rightly, in my opinionrejected. Section 440.39, Florida Statutes (1993), provides in part:
(1) If an employee, subject to the provisions of the Workers' Compensation Law, is injured ... in the course of his employment by the negligence or wrongful act of a third-party tort-feasor, such injured employee ... may accept compensation benefits under the provisions of this law, and at the same time such injured employee ... may pursue his remedy by action at law or otherwise against such third-party tortfeasor.
(2) If the employee or his dependents accept compensation or other benefits under this law or begin proceedings therefor, the employer or, in the event the employer is insured against liability hereunder, the insurer shall be subrogated to the rights of the employee ... against such third-party tortfeasor, to the extent of the amount of compensation benefits paid or to be paid as provided by subsection (3). If the injured employee ... recovers from a third-party tortfeasor by judgment or settlement,... the amount recovered from the tortfeasor shall be set off against any compensation benefits other than for remedial care, treatment and attendance as well as rehabilitative services payable under this chapter. The amount of such offset shall be reduced by the amount of all court costs expended in the prosecution of the third-party suit or claim, including reasonable attorney fees for the plaintiffs attorney. In no event shall the setoff provided in this section in lieu of payment of compensation benefits diminish the period for filing a claim for benefits as provided in s. 440.19.
(3)(a) In all claims or actions at law against a third-party tortfeasor, the employee... shall sue for the employee individually and for the use and benefit of the employer, if a self-insurer, or employer's insurance carrier, in the event compensation benefits are claimed or paid; and such suit may be brought in the name of the employee, or ..., at the option of such plaintiff, may be brought in the name of such plaintiff and for the use and benefit of the employer or insurance carrier, as the case may be. Upon suit being filed, the employer or the insurance carrier, as the case may be, may file in the suit a notice of payment of compensation and medical benefits to the employee or his dependents, which notice shall constitute a lien upon any judgment or settlement recovered to the extent that the court may determine to be their pro rata share for compensation and medical benefits paid or to be paid under the provisions of this law, less their pro rata share of all court costs expended by the plaintiff in the prosecution of the suit including reasonable attorney's fees for the plaintiff's attorney. In determining the employer's or carrier's pro rata share of those costs and attorney's fees, the employer or carrier shall have deducted from its recovery a percentage amount equal to the percentage of the judgment or settlement which is for costs and attorney's fees. Subject to this deduction, the employer or carrier shall recover from the judgment or settlement, after costs and attorney's fees incurred by the employee or dependent in that suit have been deducted, 100 percent of what it has paid and future benefits to be paid, except, if the employee or dependent can demonstrate to the court that he did not recover the full value of damages sustained, the employer or carrier shall recover from the judgment or settlement, after costs and attorney's fees incurred by the employee or dependent in that suit have been deducted, a percentage of what it has paid and future benefits to be paid equal to the percentage that the employee's net recovery is of the full value of the employee's damages; provided, *500 the failure by the employer or carrier to comply with the duty to cooperate... may be taken into account by the trial court in determining the amount of the employer's or carrier's recovery, and such recovery may be reduced, as the court deems equitable and appropriate under the circumstances, including as a mitigating factor whether a claim or potential claim against a third party is likely to impose liability upon the party whose cooperation is sought, if it finds such a failure has occurred. The burden of proof will be upon the employee. The determination of the amount of the employer's or carrier's recovery shall be made by the judge of the trial court upon application therefor and notice to the adverse party. Notice of suit being filed shall be served upon the employer and compensation carrier and upon all parties to the suit or their attorneys of record by the employee....
(b) If the employer or insurance carrier has given written notice of his rights of subrogation to the third-party tortfeasor, and, thereafter, settlement of any such claim or action at law is made, either before or after suit is filed, and the parties fail to agree on the proportion to be paid to each, the circuit court of the county in which the cause of action arose shall determine the amount to be paid to each by such third-party tortfeasor in accordance with the provisions of paragraph (a).
§ 440.39, Fla. Stat. (1993) (emphasis supplied). The statute contemplates a decision by the circuit court which binds the judge of compensation claims. Offsets, adjustments, or "percentage reductions" must occur, if at all, in circuit court.
NOTES
[1] Claimant also receives $97.50 in pension benefits from employment he held in New York and $1,179 in social security retirement benefits, but those amounts have not been considered in the calculations.
[2] In so saying, we find no res judicata prohibition on this point. The circuit court's order merely states: "I hereby order any compensation or medical payments made after April 5, 1995 by the Employer/Carrier to be reduced by 25% as a result of the lien they retain from the time of the hearing." Thus, the order provides no cap and it cannot be said that our directions, as outlined above, would run counter to the circuit court order.
[3] We assume that the supreme court implicitly found in Grice that social security disability benefits are not part of a "fund ... maintained by [the] employer for the purpose of providing compensation or medical services and supplies as required by this chapter." See § 440.21(1), Fla. Stat. (1993).